450

ILLINOIS CENTRAL RAILROAD, Plaintiff-In-Error,
v. JOHN EXUM and LELA EXUM, Defendants-In-
Error.—296 S. W. (2d) 372.

Western Section. April 22, 1955.

Petition for Certiorari denied by Supreme Court December 9, 1955.

Moss & Benton, Jackson, for plaintiff in error.

Hugh G. Arnold, Carmack Murchison, Jackson, for defendant in error.

CARNEY, J. The Illinois Central Railroad appeals from a $5,000 judgment in favor of the plaintiffs below, John and Lela Exum, for damage by fire of their dwelling and contents.

The home of the plaintiffs was located in the City of Jackson, Madison County, Tennessee, east of and adjacent to the right-of-way of defendant Railroad. The declaration alleged that, about noon of November 6, 1952, one of defendant's engines emitted sparks, live cinders or fire which set fire to grass, weeds, rubbish, and other debris which the defendant had permitted to accumulate upon its right-of-way for a distance of several hundred feet north of and in the vicinity of the plaintiffs' home; that there was a strong wind blowing from the north which drove the fire southward to and destroyed plaintiffs' residence and out-buildings and the contents thereof.

The defendants were charged with negligence:

I. Failing to equip its engines with proper fire and spark arresters or other mechanical devices to prevent the escape and emission of sparks, etc., in such volume as to cause the particular fire complained of.

II. In handling said engine in such a manner as to cause sparks, etc., to escape and set on fire the grass, weeds, etc.

III. In permitting grass and weeds and other combustible debris to grow and accumulate along its right-of-way.

IV. That on the particular day in question in view of the high wind and the grass and other combustible material in such close proximity to the tracks, the defendant failed to operate its engines with a degree of care and caution commensurate with the increased

danger of fire brought about and created by dry and windy weather conditions.

The defendant pleaded the general issue, contributory negligence on the part of the plaintiffs, and also that the fire originated on property which had been leased to the plaintiffs by the defendant by written instrument, providing, among other things, that the lessees would assume the risk of all loss and injury resulting from fires, however they might originate.

Plaintiffs filed a replication to defendant's pleas, joining issue on the first two, and, in reference to the lease, alleging that the plaintiff, Lela Exum, was not a party to the lease agreement, that the fire did not originate upon the land leased by the defendant to the plaintiff, John Exum, and that much or all the property of the plaintiff's alleged to have been damaged or destroyed by the fire were located upon plaintiff's own land, and not upon the leased premises.

At the conclusion of plaintiffs' proof, the defendant moved for peremptory instructions, which motion was overruled, and, at the close of all the proof, the defendant renewed its motion for peremptory instructions, which motion was also overruled.

The jury returned a verdict against the defendant, and in favor of the plaintiffs in the amount of $5,000. The defendant seasonably made and filed its motion for a new trial, which was by the Court overruled, and to which action of the Court the defendant excepted, and prayed and perfected its appeal in the nature of a writ of error to the Court of Appeals at Jackson.

The Railroad has filed some 13 Assignments of Error which will be discussed out of their regular order. As very candidly stated by Attorneys for the plaintiff-in-error the Assignment of Error principally relied upon is No. VIII which is directed at failure of the Trial Judge to grant a new trial on newly discovered evidence.

To consider this Assignment of Error we find it necessary to review briefly the testimony which was presented to the jury on the trial;

Lela Exum, the wife, testified that on the day in question she was sweeping trash in the back yard, and about 11:00 A.M. saw an engine of the Illinois Central Railroad pass by; that she went into the house to talk over the telephone; that the dog which was tied in the back yard began to bark so distressingly she went to the bath room window which was on the back or north side of the house to look out; that the out-buildings were all ablaze and the fire began to sweep in this window that she had opened.

She further testified that after calling the Fire Department, she ran out on the front porch which was on the south side of the house and tried to attract the attention of some of the neighbors.

The husband, John Exum, testified that he was away from home at the time the fire started and arrived while the Fire Department was putting out the fire in his home. He and his wife both testified that there was a lot of high grass along the Railroad right-of-way extending from Carter Street south to Eden Street where plaintiffs' home was located facing south on Eden Street.

Horace Cole testified that he was loading sawdust at a mill located on the west side of the Railroad right-of-way and opposite the place where plaintiffs contend the fire started; that he saw a switch engine going north and later saw it returning and shortly thereafter saw grass on fire in the open field immediately to the north of plaintiffs' home and along the east right-of-way of the Railroad.

J. B. Jones, a Service Station operator, testified that on the morning of the fire he was at the Exum home to start a truck for the Exums; that it was necessary to take the battery off and to take it to the station to be charged; that he left the premises about 11:30 A.M. and there was no fire in back of the Exum property at that time but that he did see a switch engine standing still on the tracks near the Exum property.

Other witnesses testified as to costs of repairs; amount of household goods in the home; and the burnt trail of the fire from Carter Street southward along the right-of-way to plaintiffs' home and out-buildings.

The defendant's proof consisted entirely of employees of the Railroad that there was no engine along this track at the time the fire started and that at 12:45 P.M. a freight train with a large number of cars pushed by a switch engine did pass by Exums house and the fire was in full progress. The crews of both the regular freight engine and the switch engine corroborated each other as to the time and the prior existence of the fire. The records of the Railroad showed that there was no switch engine or any other engine along these tracks at or near the time when the fire was supposed to have been started.

The jury found the sharp issue of fact against the Railroad and in favor of the plaintiffs' contention that there was an engine along the tracks which started this particular fire.

After the case was concluded in Circuit Court pending the motion for a new trial a colored man named Virgil Watkins who is an employee of the G. M. & O. Railroad in Jackson hopped the back end of a freight train coming south into Jackson. As the train passed John Exum's home, Watkins and employees of the Illinois Central Railroad noticed a fire upon the bank near Exum's house. Watkins then voluntered the remark that this fire was just like the other one started about which they had had the lawsuit. The Illinois Central employees were familiar with the other suit and they questioned Watkins closely.

Watkins then told them that at the time of the first fire, he lived on Carter Street and that the first fire started near the Exum home from rubbish and trash which Lela herself was burning and that it did not start in the vacant lot north of Exums' house, although it spread up there later and he further volunteered the information that others living in the neighborhood knew these facts to be true. This information was conveyed to Attorneys for the Railroad who then made another investigation concerning the fire.

One of the newly discovered witnesses was Robert Williams, colored, age 76, who made affidavit that at the time of the first fire, he lived on Oak Street which was about 250 feet north and east of the home of John and Lela Exum; that on the day of the fire he was at home; and that he saw Lela Exum in her back yard sweeping and

burning leaves and dry grass; that the wind was strong and from the north; that Lela Exum went into the house and when she came back out the fire had begun to spread and she tried to do something with the fire but it got away from her and she went back and, he supposed, called the Fire Department.

Williams further says that the fire did not start in the vacant lot north of the house; he further says that he has no interest in the litigation between the Exums and the Railroad.

Williams also says he saw no trains except a freight train which went north about 10:00 A.M.

Irene Houston, colored, who lives on the east side of the Railroad just north of Carter Street, refused to sign a statement but the questions of the claim agent and her answers thereto are found in the record in the form of an affidavit by the stenographer that such questions and answers were asked and given. The substance of this interview with the Claim Agent is that she was at home on the day of the fire and that someone called her to come and see the fire which was then about 50 ft. north of the Exum home and seemed to be spreading northward. Asked, "Was anyone with the fire when you saw it?" Answer, "A gang of them—white and colored. Just a lot of people." (Record p. 420.)

Watkins also refused to sign a statement saying that he and the other colored people did not want to have trouble with the Exums who were also colored and that he thought the lawsuit was over or he would not have made any statement at all.

The Railroad insists that it should have been granted a new trial in order to present this newly discovered evidence to a jury. Lela Exum was never asked whether or not she had been burning any rubbish in the back yard on the morning in question.

We think the general rule for granting new trials for newly discovered evidence was very aptly stated in the case of Tabler v. Conner, 60 Tenn. 195, 197, from which we quote as follows:

"There are well settled rules for granting new trials for newly discovered evidence, by which the present case must be governed. 1. If a party omits to procure evidence, which with ordinary diligence he might have procured, in relation to those points, on the first trial, his motion for a new trial for the purpose of introducing such testimony, shall be denied. 2. If the newly discovered evidence consists merely of additional facts and circumstances, going to establish the same points which were principally controverted before, or of additional witnesses to the same facts and circumstances, such evidence is cumulative, and a new trial shall not be granted. In cases to which these principles clearly and unquestionably apply, the granting or refusal of a new trial is not a matter of discretion. The parties have a legal right to a decision conformable to those principles. Where there is doubt upon the point of negligence, or as to the character of the evidence, or as to its materiality, it becomes a matter of discretion; and the Court will not—perhaps cannot—rightfully interfere. 1 Grah. & Waterman, New Trials, 489."

Also from 39 Am. Jur., New Trial, page 165, sec. 158, we quote as follows:

"Sec. 158. Facts Essential to Granting of Application—To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear that the evidence is such as will probably change the result if a new trial is granted, that it has been discovered since the trial, that it could not have been discovered before the trial by the exercise of due diligence, that it is material to the issue, and that it is not merely cumulative, or impeaching. The necessity of establishing these essential factors is repeatedly emphasized by the courts in passing upon the propriety of granting or denying new trials upon this ground. While the application for a new trial should be granted where it appears that the new evidence, if believed by the jury, would have changed the result, a re-trial is properly denied where it is to be concluded that the additional evidence would not have had this effect, or where it is shown that the testimony is conflicting and that there is ample evidence in the record, if believed by the jury, to sustain the verdict. Therefore, it becomes necessary for the court to take into consideration the weight and importance of the new evidence, its bearing in connection with the evidence on the former trial, and even the credibility of the witnesses."

The affidavits of the Claim Agent and one of the Attorneys for the Railroad are included as part of the motion for a new trial. These affidavits state in substance that immediately after the fire they visited the neighborhood and talked to all the persons they could find and

could not and did not find any witnesses who knew anything about the fire or how it started. No names were taken of the persons talked to and the affiants state they do not know whether they talked to Robert Williams, Irene Houston, or Virgil Watkins prior to the fire or not. We observe that the statements of Williams, Houston, and Watkins, all of whom lived in the immediate vicinity of the fire, are silent as to whether or not they had been interrogated concerning the fire prior to the trial.

■ We think the evidence upon which the Railroad sought a new trial in this case was the type which rested within the discretion of the Trial Judge as to whether or not a new trial should be granted. His Honor in the exercise of such discretion refused to grant a new trial and we find no abuse of that discretion. See Vest v. Bitner, 34 Tenn. App. 575, 241 S. W. (2d) 438; Monday v. Millsaps, 37 Tenn. App. 371, 264 S. W. (2d) 6.

Therefore, a motion for a new trial must be respectfully overruled.

■ Assignment of Error III complains of the action of the Trial Court in admitting in evidence over the objection of the defendant the testimony of John Exum to the effect that on prior occasions defendant's switch engines had set fire to debris along the Railroad track.

The record shows that plaintiff Exum qualified his original answer by saying that they were supposed to have been started by the trains and then saying that he did not know of his own knowledge that they were so caused. We see no prejudice accruing to the Railroad by this testimony especially in view of the fact that its whole defense was predicated upon the position that there had

been no trains or engines near the Exum house which could have caused the fire. Hence, the Assignment of Error must be overruled.

■ Assignment of Error IV complains of the action of the Trial Court in permitting the plaintiffs and other witnesses to testify affirmatively as to where the fire started or in what direction it spread when the witnesses did not see it start or spread. From our reading of the record, we think the jury clearly understood at all times that the witnesses were testifying that the nature of the burnt grass, the direction of the wind, the location of the out-buildings and their time of burning all indicated that the fire started near Carter Street and burned southward to the Exum property on Eden Street. In fact, Mr. Wilkinson, track supervisor for the defendant Railroad, testified that the fire started north of Exums' house and burned southward. From pages 308 and 309 of the record we quote from his testimony as follows:

"Q. 32. Now, just tell, Mr. Wilkinson, what you observed; and if you made any measurements, what measurements you made and what you found when you investigated in the course of your duties? A. I investigated the grass along the right of way to try to determine how close the fire had burned to the right of way along this distance and where the fire was.

"Q. 34. Well, now, where was that? A. That was north of right where the fire started. In other words, close to the portion of the fire up there along Carter Street.

"Q. 35. Carter Street? A. Yes, Sir.

"Q. 36. Twenty-two feet and eight inches from the east rail? A. From the east rail.

"Q. 37. And that is by actual measurement? A. Yes, Sir.

"Q. 38. And, as you observed the burned portion of the grass, where did the fire go, from there southward? A. Well, er—from the way the wind was—

"Q. 39. (Interrupting) Straight down, or how? A. It—er—along our right of way, paralleling our right of way, why it was the—in regard to the track, why it was kinder straight along. Some of it was out a little further. Of course, this was the closest place, this twenty-two foot and eight inches, and it went on down to this Eden Street, of course the street stopped it there."

Further, it does not appear that the defendants timely objected to this testimony.

We see no prejudice to the defendant from such testimony and the Assignment is respectfully overruled.

■ Assignments of Error V and VI complain of the action of the Trial Court in permitting the plaintiff Lela Exum to testify as to the cost price of articles of personalty and as to the actual or market value of such personalty which were lost in the fire without stating the age or other factors which entered into the actual or market value.

We think it proper for the plaintiff to testify as to the cost of certain articles and as to their actual value. The defendant had a right to cross-examine concerning the age of these articles of personalty as well as the right to

introduce other evidence as to their age, condition, value, etc. 20 Am Jur., Evidence, p. 338, Sec. 372, Personal Property; McKinnon v. Michaud, 37 Tenn. App. 148, 260 S. W. (2d) 721.

We find that the Trial Judge was not in error in admitting such evidence. Hence, the Assignments of Error are overruled.

Assignment of Error VII insists that the $5,000 verdict is excessive and so excessive as to indicate passion, prejudice or unaccountable caprice on the part of the jury.

Plaintiffs' testimony was that they had an eight-room frame dwelling and that it cost $3,400 to repair the damage to the house itself. In addition to the residence other out-buildings were a chicken house, a garage, a mill shed and a two-room tenant house. In the absence of any evidence contrary, we think the record reveals that the value of the improvements which were burned amounted to approximately $4,000 which would indicate that the jury allowed approximately $1,000 for personal property. Plaintiffs contended that the cost price of the personal property lost amounted to $8,000 and the jury found the actual value to be approximately $1,000. We do not find the verdict excessive and the Assignment is overruled.

Assignment of Error IX complains of the action of the Trial Court in charging plaintiffs' special request No. 1 which was as follows:

"It was error for the Court to deny defendant's twelfth ground of its motion, which complained of the Court's giving in charge to the jury the plaintiffs' Special Request No. 1, which was as follows:

"Special Request No. 1

"I charge you further, gentlemen of the jury, that if you find that there was a drought and a wind on the day of the fire and that the running of trains was attended with unusual danger from sparks, the law required of the defendant railroad company unusual care and precaution and the failure of the defendant railroad company to exercise such care and precaution would be negligence."

The phraseology of this charge was approved by the Supreme Court in the case of Louisville & N. Railroad Co. v. Fort, 112 Tenn. 432, 450, 80 S. W. 429. The defendant Railroad insists that the plaintiffs were required under the same weather conditions to exercise a higher degree of care and the Court should have so charged. No special request to this effect was tendered by the defendant and the Assignment of Error must be respectfully overruled.

Assignments of Error X and XI complain of other special requests made by the plaintiff and given by the Court in his charge to the jury. We have considered these requests and are of the opinion that they were properly charged by His Honor the Trial Judge.

Assignment of Error XII complains that the charge as given by the Court was insufficient because it did not charge the jury in reference to the issue as to whether or not the fire originated on that portion of the premises owned by the Railroad and leased to the plaintiff.

As stated above the real issue upon which the defendant went to trial was that defendant had no engine in the vicinity which could have caused the fire and the Rail-

road introduces no proof tending to show that the fire started on the leased premises and no special request for such a charge was made upon the trial. We feel that the Assignment of Error is without merit and must be overruled.

Assignment of Error XIII complains that the charge of the court was deficient on Contributory Negligence on the part of the plaintiffs. The defendant contends that while the Trial Court charged the jury on the general subject of Contributory Negligence he made no reference to the testimony of the plaintiffs concerning rubbish or inflammable material on the leased land of the plaintiff as well as on their own property which might have contributed to the origin of the fire. In the absence of a special request by the defendant to such a charge, we do not feel that the Trial Court should be held in error for failure to so charge. Hence, the Assignment is overruled.

 Attorneys for the Railroad have conceded that Assignments of Error I and II relating to the sufficiency of the evidence to sustain the verdict are not well taken.

All of the Assignments of Error having been overruled, it follows that the appeal must be dismissed and a judgment will be entered in this Court in favor of the plaintiffs for $5,000 against the defendant Railroad together with interest from April 26, 1954, the date of overruling the motion for a new trial in the lower court.

The plaintiff-in-error, Illinois Central Railroad, and its sureties on the appeal bond are taxed with the costs of the appeal.

Avery, P. J. (W. S.), and Bejach, J., concur.