HARRY LEE PUCKETT, Plaintiff-in-Error, v.
JOHN D. LASTER, Defendant-in-Error.
—405 S.W.(2d) 35.

Western Section. March 11, 1965.

Certiorari Denied by Supreme Court August 16, 1965.

68

Allen J. Strawbridge, Dresden, Heathcock & Cloys, Union City, for plaintiff in error.

Homer W. Bradberry, Dresden, for defendant in error.

CARNEY, J., Upon the trial below the plaintiff, John D. Laster, was awarded $15,000 by the jury for personal injuries sustained in an automobile collision on October 24, 1962. The accident happened about 6:00 P.M. on U. S. Highway 45E between the towns of Sharon and Greenfield about one-half mile south of the Middle Fork of the Obion River. Plaintiff John D. Laster was driving southward in a 1958 Ford pickup truck owned by his employer, Eveready Auto Parts Company, of Greenfield. He ran

into the rear of a 1958 GMC 1½ ton truck driven by the defendant, Harry Lee Puckett, who was also traveling southward.

Plaintiff Laster was alone in the Ford pickup truck. The defendant, Harry Lee Puckett, had two passengers with him in the GMC truck, his brother, J. D. Puckett, and Shannon Priest, who had been helping with the combining of soy beans. Only Mr. Laster was injured in the collision.

Judgment was entered on the verdict and the defendant, Harry Lee Puckett, has appealed and assigned error. Plaintiff was severely injured and no attack is made on the amount of the judgment.

Assignment of error No. I assails the action of the Trial Judge in refusing to admit in evidence before the jury a written statement purporting to be a narration by the plaintiff, John D. Laster, of the manner in which the accident occurred. The written statement was not made a part of the bill of exceptions but was read into the record upon the cross-examination of the plaintiff taken out of the presence of the jury. The statement consisted of several handwritten pages with the name of the plaintiff affixed to each page. The statement was dated November 2, 1962, eight days after the accident, at which time the plaintiff was still confined to the Madison County Hospital.

The statement was presented to the plaintiff for examination. Mr. Laster stated that the body of the statement was not in his handwriting but it looked like his signature. However, he said he ordinarily signed his name John D. Laster instead of John Laster; that he had no recollection of ever signing or even seeing the

statement; that he had no recollection of being interviewed by anyone while in the hospital and that he was heavily sedated for about two or three weeks while in the hospital.

Mr. Laster testified that that portion of the written statement which recited that his lights were on "park" was incorrect and that that portion of the statement that said that he never saw the truck until it was right in front of him was incorrect.

Upon objection His Honor the Trial Judge refused to permit attorney for defendant to introduce the written statement in evidence before the jury or to interrogate the plaintiff concerning the contents of the statement in the presence of the jury without proof as to who took the statement, where it was taken and the conditions under which the statement was taken. Attorney for defendant replied that he was not prepared to make such proof. The jury was returned and the trial resumed without the written statement ever being admitted in evidence.

Plaintiff had testified on direct examination that as he rounded a curve the lights of his car shone on the truck operated by defendant Puckett which was then approaching Highway 45 from the west on an upgrade; that the truck had no lights on it; that shortly thereafter plaintiff met two northbound automobiles the lights of which blinded him and that after he passed the second northbound car he discovered that he was immediately in the rear of the Puckett truck which had entered the highway, turned right and southward on Highway 45E in front of the plaintiff; that the plaintiff applied his brakes and struck the back end of the truck almost simultaneously.

The point of collision on the highway was about 160 feet south of the mouth of the field road along which the defendant had entered Highway 45 from the west. Plaintiff has affirmatively testified that he was not driving on parking lights but with his regular lights on and that they were on bright except for the times when he had dimmed them for approaching vehicles.

The contents of the written statement signed by the plaintiff but of which the plaintiff said he had no recollection whatsoever are as follows:

"My name is John Laster, white, male, age 43, reside at Greenfield, Tennessee. I am employed by Eveready Auto Parts Company in Greenfield, Tennessee. On Wednesday, October 24, 1962, at about 6:00 P.M., I was driving a 1958 Ford one-half ton pickup truck owned by Jack Huggins south on Highway 45, near Greenfield, Tennessee. I remember coming across the bottom, and that I was driving about 50 m.p.h. I had crossed the bridge and gone around the curve, and there was a straight stretch of road. I don't remember what my lights were on, but I believe they were on park. The last I remember before the accident happened was seeing the bulk of a truck in front of me. I did not see any lights of any kind on the truck. When I first saw the truck it was right in front of me, if I ever saw it at all. I did not apply my brakes or try to stop at all. There was no marks on the road from this. I don't know if I was meeting any traffic or not. I was not tired or sleepy and do not know why I did not see the truck if it had any lights on. I ran into the rear of the truck and hit it about the center of the rear. I was knocked out by the impact. I was brought to Jackson to the hospital where I am now confined with

both legs broken; left arm broken at my wrist, and a cut on my forehead, and a cut on my chin. My chest is bruised and I am bruised all over. I am being treated by Dr. Jack Boothe and his Assistant, Dr. Smith. The truck I hit was owned by Harry Puckett of near Greenfield, Tennessee. I don't know if there was anybody else in the truck or not. I was alone in the truck I was driving. The Highway Patrol investigated the accident. It did not place any charge that I know of. The road is straight and level and it was dry where the accident happened. I had not been drinking any before the accident. I don't drink but a very little, and I don't drink any while I'm on the job. In my opinion the accident was caused by the driver of the truck misjudging the distance I was away, and not having any lights on. If the truck had had lights on, I could have seen it and missed it. The road was wide enough for me to have gone by the truck if I had seen the truck in time, and if there was no traffic meeting me. Under the circumstances I don't know of anything I could have done to avoid the accident. I feel the driver of the truck should have waited about three or four minutes before pulling out on the highway. I have read or heard read this statement, and it is true and correct to the best of my knowledge. Dated 11-2-62,—signed, John Laster." Then the letters "P. S." on it. Then after the letters P. S., "Where the accident happened there is a bridge and the road makes a bend to my left." Again the words, "11-2-62," and a little short dash, and the words "John Laster."

Thus it appears that the contents of the written statement allegedly signed by the plaintiff are in conflict with the plaintiff's testimony on direct examination in two

material aspects: (1) Plaintiff testified that he was driving with his regular lights on whereas the alleged statement says he was driving probably with lights on park or at least the plaintiff did not know what lights he had on. (2) Plaintiff testified on direct examination that he had first seen the defendant's truck in the side road on the west side of Highway 45E as the plaintiff rounded the curve and the lights from his automobile shown on the truck and that the truck had no lights on at the time the plaintiff saw the truck whereas the statement is to the effect that the plaintiff saw the defendant's truck for the first time immediately prior to striking it on Highway 45E.

The defendant, Harry Lee Puckett, testified that on the day in question he had been combining soy beans and left the field shortly before 6:00 P.M. with about 6,000 pounds of soy beans on his truck; that the field road leading to Highway 45E went upgrade and he stopped just west of the pavement, waited for two southbound cars to pass, looked to his left and saw no car approaching but in the far distance to his left up Highway 45E to the north he did see a dim light which could have been the parking lights of a vehicle; that the lights on his GMC truck both in front and in the rear were burning; that he put his truck in double low, pulled up onto Highway 45E and pulled to the right and to the south, straightened up and was in the process of shifting gears from double low to regular low at a speed of 20 miles per hour when he felt a great blow from the rear of his truck which made him think his truck had exploded.

Mr. Puckett further testified that within a few days he and his brother, J. D. Puckett, who was also in the truck with him at the time of the collision, visited Mr. Laster,

their friend, in the hospital in Jackson, Tennessee; that Mr. Laster asked them what happened and they told him that he ran into the back of the GMC truck to which Mr. Laster replied, ''I never did see a thing. I don't remember a thing. I never did see that truck.'' Further, Mr. Puckett testified that Mr. Laster asked Mr. Puckett if he had lights to which Mr. Puckett answered, ''I did'' and that Mr. Laster then said the best he remembered he, Laster, was still driving with the parking lights on the pickup truck. Mr. Laster testified that he did not remember Mr. Harry Lee Puckett and his brother coming and had no recollection of any conversation with them but that his wife had told him that the brothers Puckett did visit him in the hospital.

■ Prior contradictory statements of a party as to material matters are generally admissible in evidence both for the purposes of impeachment of the party as a witness and as substantive evidence where the prior inconsistent statement contains admissions which are contrary to the interest of the party. The general rule with reference to the effect of the introduction of written admissions by parties is clearly stated in the case of Nelson v. Rural Educational Association, 1939, 23 Tenn. App. 409, 134 S.W.2d 181:

'' 'The admissions and confessions of parties are always evidence against them; and all they said at the same time is always evidence for them; but not what they said at any other time.' History of a Lawsuit, 4 Ed., (Martin), page 279.

''In this connection, plaintiff cites 22 C.J. pages 412, 413, section 495, where it is said: 'The party offering a written admission is not bound by all the state-

ments in the writing, but may take advantage of such as are in his favor and contradict the rest'.

"But the rule thus stated does not mean that such statements in a written admission as are favorable to the party against whom the admission is proved may be ignored. It is said in Jones on Evidence, 2nd Ed., Vol. 3, page 1957, that 'Every admission upon which a party relies is to be taken as an entirety of the fact which makes for his side, with the qualifications which limit, modify, or destroy its effect on the other side. This is now a settled principle which has passed, by its universality, into a maxim of the law'; and in the same volume, at page 1962, it is said: 'A court or jury is not bound to give equal credit to all parts of a statement or admission; they may believe a part and disregard the rest. The rule only requires that what is in favor of the party making the admission should be fairly and liberally considered and weighed with the other evidence. Of course, the one offering admissions of this character is not bound by the statements which are favorable to the declarant. He may rebut such statements or show them to be erroneous; and it is for the court or jury to reject such portions of the statement, if any, as appear to be inconsistent, improbable or rebutted by other circumstances in evidence.'

"The rules thus stated in Jones on Evidence were quoted and approved in the cases of West v. Southern Railway Company, 20 Tenn.App. 491, 496, 100 S.W.2d 1004, and Nichols v. Smith, 21 Tenn.App. 478, 488, 111 S.W.2d 911."

█ Now in the case at bar the plaintiff did not deny having an interview with someone in his hospital room

and did not deny that he signed the written statement. On the contrary, he merely said that he was under sedation and had no recollection of any interview with any person and had no recollection of ever having seen the statement or ever having signed it.

In Reagan v. Mabry, 67 Tenn. 168, (1874), our Tennessee Supreme Court held that where a witness had been asked as to contradictory statements which he neither admitted nor denied that evidence of such statement was admissible because such statements when proven may have been such as to amount to a direct contradiction of the witness and may also possibly have convinced the jury that the witness did not speak the truth in saying that he did not remember making the statement. See also Power Packing Company v. Borum (1928) 8 Tenn.App. 162, 174.

We have been unable to find a case in Tennessee entirely on all fours with the question at bar, namely the admissibility of a written statement proven only by a litigant who admits having signed it but of which he disclaims any knowledge or recollection. However, the following statement is found in 31A C.J.S. p. 711, on Evidence, sec. 282, Written Admissions:

"Admission of signature but denial of statement. In an action for personal injuries a written statement signed by plaintiff and claimed to have been made by him prior to the action, giving the circumstances of his injury, is admissible although plaintiff, while admitting his signature, denies having said the things contained therein."

██ Since the plaintiff, Laster, admitted that he had signed the written statement which was partially contra-

dictory of his direct testimony the defendant was entitled to have this written statement introduced in evidence for consideration by the jury along with such explanation and testimony as the plaintiff saw fit to make concerning the circumstances attending the execution of such written statement and the contents of such written statement. Whether plaintiff was mentally competent at the time he signed the statement was for the jury to determine. Since the plaintiff identified his signature on the written statement it was not indispensable that the defendant introduce testimony of the one to whom the written statement was allegedly given nor trace the possession of such written statement into the hands of the attorney for the defendant. The failure of the defendant to introduce such evidence, of course, was a factor to be considered by the jury in weighing the testimony of the plaintiff relating to said written statement. Assignment of error No. I is therefore sustained.

Assignment of error No. II complains of the refusal of the Trial Judge to give in charge defendant's special request No. 2 which was as follows:

"2. A driver on a private road or driveway, who has stopped at the entrance of the main highway is entitled to enter such main highway if there be no approaching vehicles in such proximity to the intersection as to constitute an apparent and immediate hazard."

In view of the uncontradicted evidence that the defendant Puckett had driven from the farm road onto U. S. Highway 45E, had turned south and traveled 160 feet before being struck by the automobile driven by the plaintiff and in view of the fact that the plaintiff's declaration specifically charged the defendant with negligence in

turning onto the highway in front of him, we think His Honor the Trial Judge was in error in refusing to give such special request. It was not covered sufficiently in the original charge and therefore assignment of error No. II is sustained.

■ Assignment of error No. III complains of the refusal of the Trial Judge to charge defendant's special request No. 3 predicated upon the case of De Rossett v. Malone, 34 Tenn.App. 451, 454, 239 S.W.2d 366, which states in substance that the testimony of one whose vision is unimpaired and whose view was unobstructed, that he looked and did not see what was clearly within his range of vision and must in the nature of things have been seen is contrary to the physical facts and cannot be accepted as evidence. Plaintiff had testified that his vision was impaired because he was blinded by the lights of the approaching or oncoming cars and hence did not and could not see the defendant's truck until he had passed the oncoming cars and did not have time to stop before striking the truck. This presented a question of fact for the jury which apparently the jury decided in the plaintiff's favor. At the very most it was harmless error, if error at all, for the Trial Judge to refuse to give such special request. Therefore, assignment of error No. III is overruled.

■ Assignment of error No. IV complains of the refusal of the Trial Judge to charge special request No. 4 which was as follows:

"4. The fact that one is observing the speed limit prescribed by State Statute does not necessarily prove that he is not going at an excessive rate of speed. He may not be violating a State Statute and yet his

speed may be excessive under all the surrounding facts and circumstances.

"If, for example, he is driving at a rate of speed which is improper and at which a reasonable prudent man would not drive under the same or similar facts and circumstances and is not exercising ordinary care in his rate of speed, he is guilty of negligence even though not violating a State Statute."

The above special request was predicated upon the case of Herstein v. Kemker, 19 Tenn.App. 681, 94 S.W.2d 76, which reversed a trial court for refusing a similar special request. Upon the trial below the defendant Puckett introduced evidence showing that the plaintiff's pickup was so tightly wedged under and against the bed of the GMC truck that it was necessary to drive the GMC truck down the highway about a mile to obtain a wrecker to separate the pickup from the truck. There was also proof introduced by the defendant Puckett to show that the GMC truck and the pickup truck driven by the plaintiff traveled something over 100 feet after the impact though the plaintiff testified that the defendant's truck appeared to be almost standing still at the time he struck it. Plaintiff said he was traveling 45 to 50 miles per hour. The jury could well have found that the plaintiff was traveling at a rate of speed excessive under the circumstances though not necessarily in violation of any state speed law. We think the special request should have been given and that His Honor the Trial Judge was in error in refusing so to do. No mention of speed on the part of the plaintiff was given in His Honor's general charge.

Assignment of error No. V insists that the Trial Judge erred in refusing to grant a new trial on the

ground of newly discovered evidence, namely the testimony of one Hollis Harrison who would testify that he was driving south on U. S. Highway 45E and passed the scene immediately prior to the accident and saw the lights of a motor vehicle proceeding eastward along the farm road approaching the highway and being evidently the Puckett farm truck.

Assignment of error No. VI complains of the refusal to grant a new trial on the grounds of newly discovered evidence, namely the testimony of Lloyd Foster and wife, Mattie Foster, friends and neighbors of John D. Laster, who on Sunday following the accident visited Mr. Laster in the Jackson-Madison County Hospital and who would testify that Laster recognized them and greeted them and told them that he never did see the truck which he struck and that Laster appeared rational and normal during the entire conversation. Also defendant submitted an affidavit of Clyde E. Stout, a friend and neighbor of Mr. Laster, who visited him in the hospital within a few days after the accident and to whom Laster allegedly told, ''I am told that I ran under the back of Henry Puckett's truck but I never saw the truck,'' and that Stout would testify that Laster appeared to be entirely rational.

Assignment of error No. VII insists that the defendant was entitled to a new trial on the grounds of newly discovered evidence as shown by the affidavit of several witnesses that the way the pickup truck was jammed in under the center of the back of the Puckett farm truck all the way up to its windshield it would have been impossible for a person to see the taillight assembly on the Puckett farm truck and that after the trucks were

disengaged the taillight assembly was found to have been completely smashed and demolished in the collision.

His Honor the Trial Judge quite properly overruled that portion of the defendant's motion for a new trial based upon newly discovered evidence for two reasons: First, the evidence sought to be introduced is in a large measure cumulative to the testimony of the defendant and his witnesses who were occupants of the truck along with him. In the second place and more importantly, the defendant and his solicitor have failed to show that the evidence sought to be introduced on the second trial could not have been discovered before the first trial by the exercise of due diligence. Tabler v. Connor, 60 Tenn. 195, and Illinois Central R. R. v. Exum, 1955, 41 Tenn. App. 450, 296 S.W.2d 372. Therefore, assignments of error V, VI and VII are respectfully overruled.

For the errors shown above the judgment of the lower court is reversed and the cause will be remanded for a new trial consistent with this opinion. The costs of this appeal are taxed against the plaintiff below, John D. Laster. The costs accrued in the court below will abide the results of the subsequent trial.

Avery, P.J. (W.S.), and Bejach, J., concur.