**Robert MILLER Plaintiff–Appellant,**

v.

**Jason CATE, Nicole Reid, Michael Jones, Monica Tedford, jointly and severally Defendant–Appellees.**

No. 02–1349.

United States Court of Appeals, Sixth Circuit.

Jan. 7, 2004.

Robert Miller, pro se, Flint, MI, F. Mark Hugger, Ann Arbor, MI, for Plaintiff–Appellant.

Frederick L. Schmoll, III, Michael W. Edmunds, Gault, Davison, Flint, MI, for Defendant–Appellee.

Before BATCHELDER and ROGERS, Circuit Judges; and RUSSELL, District Judge.*

RUSSELL, District Judge.

Plaintiff Robert Miller ("Miller") appeals from the district court's order granting summary judgment in favor of defendants Jason Cate, Nicole Reid, Michael Jones, and Monica Tedford ("officers") on his claims of assault and battery and the officers' use of excessive force. Plaintiff's suit arises from events surrounding his arrest in Flint, Michigan for interfering with the police during the lawful execution of their duties. Miller first brought a seven-count complaint in state court alleging (1) False Arrest. (2) Assault and Battery, (3) Malicious Prosecution, (4) Invasion of Privacy—False Light, (5) Concert of Action, (6) Intentional Infliction of Emotional Distress, and (7) Supervisor Liability. Invoking 28 U.S.C. § 1441, the officers removed the case to the United States District Court for the Eastern District of Michigan. The district court granted a Stipulated Order Allowing Plaintiff to File First Amended Complaint. Miller then filed an amended complaint, adding an eighth count for Excessive Force in Violation of the Fourth Amendment.

---

* Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

Following considerable discovery, including lengthy depositions by all the people at the Miller's home on the night in question, the officers filed a Motion for Summary Judgment. The district court held a hearing on the motion and found that there was probable cause for the arrest, that the plaintiff could not identify his assailant, and that the officers' use of force was reasonable and not excessive; the court granted the officers' motion on all counts. Miller's timely appeal followed. On appeal. Miller concedes the existence of probable cause and waives his claims of false arrest, malicious prosecution, and supervisory liability. Before this court. Miller challenges the district court's ruling on his ability to identify his assailant and argues that a question of material fact exists regarding the force used when the officers arrested him.[1]

## BACKGROUND

Consistent with other cases involving claims for the use of excessive force, the facts surrounding the Miller's arrest are of particular significance. On March 19, 1999, Jeffrey Miller, son of plaintiff Robert Miller, became significantly intoxicated and, along with his friend Ryan Miller, returned to Jeffrey's parents' home, where Jeffrey was living at the time. Jeffrey became uncooperative, difficult to control, and apparently intended to leave his parents' house and drive to somewhere else. At this point, Miller's wife, who is blind, called 911 in hopes that the police would help "calm him down," or take him to the hospital for "detox of some sort."

Officers Jason Cate and Nicole Reid were dispatched to the Millers' home. They met the plaintiff on the front porch and observed Jeffrey, who was in the living room and screaming. Ryan was physically struggling with Jeffrey on the sofa, in an attempt to calm him down. According to the plaintiff, the officers immediately drew their guns as Miller tried to tell them their guns were unnecessary. The plaintiff admits that Jeffrey did pick up a baseball bat after the officers arrived on the front porch. Officer Reid testified that Jeffrey picked up the bat, began swinging it around, and moved toward the officers. Ryan took the bat away from Jeffrey. The officers then reholstered their weapons and entered the house. Ryan continued to struggle with Jeffrey but Jeffrey broke away from Ryan and started toward the officers. Officer Cate sprayed Jeffrey with mace. The officers stepped off of the front porch and called for backup. After the arrival of Officers Michael Jones and Monica Tedford, and while Jeffrey repeatedly ran in and out of the house shouting obscenities, the officers decided to arrest Jeffrey for felonious assault.

When the officers entered the house. Jeffrey ran out the back of the living room and into the kitchen, followed by Ryan. The plaintiff and his wife, who had been moved toward the front door, then came right back into the living room. Officers Reid and Jones went into the kitchen to get Jeffrey, but he ran downstairs into the basement. Plaintiff followed the officers into the kitchen, where they told him to leave the house. Officer Tedford caught Ryan and, with the assistance of Officer Cate, took Ryan into the living room and handcuffed him. Officer Tedford then took Ryan out to a police cruiser and stayed there through the remainder of the events giving rise to this suit.

Meanwhile, back in the kitchen, Jeffrey emerged from the basement holding a plastic-covered barbell plate above his

---

1. The excessive force claim is dispositive; therefore, the ability to identify his assailant need not be addressed.

head, which caused Officer Jones to draw his gun and order Jeffrey to drop the weight. Plaintiff remained in the kitchen, yelling at the officers to put their guns away and leave. Miller testified in his deposition that he was not removed from the house at any point in the evening. Officer Jones maced Jeffrey, who dropped the weight and ran back down into the basement. When the officers opened the side door in the kitchen to let in fresh air, they claim that the plaintiff reentered the kitchen and that the officers again told him to stay outside. According to the officers. Miller ignored the order and tried to push past Officer Jones. At this point, Miller was placed under arrest. Using Miller's forward motion. Officer Jones took Miller to the ground and handcuffed him. Later, the officers picked Miller up and helped him to his feet. Miller claims he was at the top of the stairs leading down to the basement when he was grabbed from behind and handcuffed.

Once Miller was handcuffed, the officers proceeded down into the basement where they arrested Jeffrey. The officers have no recollection of how Miller fell and injured himself, claiming they discovered the plaintiff lying outside on the sidewalk after bringing Jeffrey up out of the basement. Miller claims that, as soon as he was handcuffed, he was pushed off of the two steps onto the landing and then forcibly shoved out the back door. From the kitchen, there are two steps down to a landing. At the landing, a person could open the door and go outside or proceed down a flight of stairs to the basement. Miller fell forward, and with his hands cuffed behind him, was unable to break his fall, hit his head, and lost consciousness. The plaintiff did not see which officer shoved him. Once the officers discovered Miller on the ground, bleeding and unresponsive, they requested an ambulance and the plaintiff was taken to the hospital. Following his arrest for interfering with a police officer.

Miller pleaded no contest, and the charges were eventually dismissed.

Although the officers deny shoving Miller on the night in question, they acknowledge for summary judgment purposes that this court must look at the evidence in the light most favorable to the plaintiff, requiring them to concede that someone pushed Miller that evening.

## ANALYSIS

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc), and we consider the record as it stood before the district court at the time of its ruling. *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1303 (6th Cir.1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an ele-

ment essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The measure of necessary force in a state law assault and battery claim against a police officer "is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary." *Brewer v. Perrin,* 132 Mich.App. 520, 349 N.W.2d 198. 202 (Mich.Ct.App. 1984). Similarly, under the Fourth Amendment, an officer may use reasonable force when making an arrest. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "As in other Fourth Amendment contexts . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. Because we lack a precise definition of reasonableness under the Fourth Amendment, the Court instructs us to look to the particular facts and circumstances in each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S.Ct. 1865. The Court also warned that " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment," and that officers are often forced to make split-second decisions "in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396–97, 109 S.Ct. 1865.

We must look at circumstances particular to this case. In the few moments before Mr. Miller's arrest, Jeffrey went downstairs to the basement and started up the stairs with a plate from a barbell set. Ryan, Mr. Miller, and four officers were in the kitchen at the top of the stairs. The kitchen is a very small room. The officers drew their guns. Then, Mr. Miller began screaming for the officers to put the guns away. Next, Ryan stepped in between the officers and Jeffrey and yelled at the officers not to shoot Jeffrey. Two of the officers took Ryan into the living room and arrested him. Meanwhile, the other officers sprayed mace on Jeffrey. Jeffrey ran downstairs. Then, Mr. Miller stepped in between the officers and Jeffrey. The officers handcuffed Mr. Miller and pushed him out the back door. Mr. Miller fell on the concrete walkway. The door is several inches above the walkway so that there is a small step down to leave the kitchen area.

We must examine the circumstances surrounding the officers' actions in this case to determine if their actions were objectively reasonable. *Graham,* 490 U.S. at 397, 109 S.Ct. 1865. The scene with Ryan. Mr. Miller, and Jeffrey yelling at the officers in a small kitchen must have been very chaotic. At that time, Jeffrey was down in the basement and the officers did not know what Jeffrey was doing. Because the officers did not know what Jeffrey was doing, the scene became more out of control and dangerous. The officers needed to get control of the scene and they did so by arresting Ryan and Mr. Miller, keeping them from further interfering with the officers' ability to arrest Jeffrey. First, the officers arrested Ryan. Then, Mr. Miller interfered with the officers' ability to arrest Jeffrey by standing on the landing between the officers in the kitchen and the basement where Jeffrey was. Mr. Miller recalls that "[e]verything then became a problem between the officers and me." Next, Officer Jones placed Mr. Mil-

ler under arrest because he was interfering with the officers' work and was not listening to the officers' commands to stay out of their way. The officers removed Mr. Miller from the scene by pushing him outside the back door. The officers handcuffed and pushed an uncooperative person, Mr. Miller, out of the officers' way when he was not following the officers' verbal commands to stand aside. The officers' actions in this case were reasonable.

## CONCLUSION

We find that the district court's grant of Summary Judgment to the officers was proper. Therefore, the decision of the district court is AFFIRMED.