IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Brief January 28, 2005

## KEVIN K. MCCRARY v. CITY OF MEMPHIS

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004385-02     The Honorable D'Army Bailey, Judge**

---

**No. W2004-01840-COA-R3-CV - Filed February 25, 2005**

---

City of Memphis challenges judgment of trial court finding the city liable, under the Governmental Tort Liability Act, for negligence of a police officer that proximately caused injuries to a criminal suspect who was being placed under arrest. City contends that the trial court erred in admitting into evidence the statement of police officer taken during a police department internal investigation; in finding that the officer's actions were negligent instead of intentional; and in failing to apply properly the correct standard of care. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Robert D. Meyers of Memphis for Appellant, City of Memphis

Samuel J. Muldavin of Memphis for Appellee, Kevin K. McCrary

**OPINION**

**I. PROCEDURAL HISTORY**

Both parties to this appeal have agreed upon the accuracy of the following Statement of the Case, which appears in the appeal brief filed by the Appellant, the City of Memphis[1]:

On August 2, 2002, Kevin K. McCrary ("Plaintiff") filed suit against the City of Memphis ("Defendant") pursuant to the Tennessee Governmental Tort Liability Act,

---

[1]     We omit one clause of a sentence with which the Appellee takes issue from our recitation of the Statement of the Case. We also omit citations to the technical record, hearing transcripts, trial transcripts, trial exhibits, and deposition transcripts.

Tenn. Code Ann. § 29-20-101 et seq. ("GTLA"), in Shelby County Circuit Court. In his Complaint, Plaintiff maintains Memphis Police Department Officers Paul Giannini and Anthony Murdock (collectively "Officers") used excessive force in effecting his arrest on August 6, 2001. Plaintiff alleges Defendant is liable both for the Officers' negligence under respondeat superior and for its own negligence in failing to train its officers in the proper use of force.

Defendant moved for summary judgment on April 30, 2004, arguing that the Officers' alleged actions, if they occurred, were an unforeseeable intentional act for which Defendant cannot be held liable under the GTLA. In support of this contention, Defendant noted Plaintiff's deposition testimony that his alleged injuries were inflicted "purposely" rather than accidentally. Defendant also maintained that it could not be held liable for its training procedures, which reflect discretionary functions that are immune from suit.

On June 25, 2004, the trial court conducted a hearing on the motion. At the hearing, Plaintiff abandoned his "failure to train" claim for lack of proof, but argued in defense of his *respondeat superior* claims. [T]he lower court nonetheless found that a determination of fact remained as to whether the Officers' conduct was intentional or negligent. Accordingly, the trial court denied Defendant's motion on the *respondeat superior* claims.

On June 30, 2004, the lower court conducted a bench trial, sitting without a jury. During the trial, Plaintiff's counsel offered the statement given by Officer Murdock to the Internal Services Bureau ("ISB") during the course of an internal departmental investigation of the events at issue. In his statement, Officer Murdock stated, in relevant part, that "it's a possibility" he stepped on Plaintiff's face during the course of the arrest. The lower court admitted the statement over defense counsel's opposition, ruling that the statement fits within the hearsay exception for statements against interest contained at Tenn. R. Evid. 803(1.2)(D). At the conclusion of the trial, the lower court found Office Murdock negligently used excessive force in arresting Plaintiff and ordered an award of damages against Defendant in the amount of $35,000. The trial court entered its order reflecting these findings on July 8, 2004. Defendant then timely filed the instant appeal on July 21, 2004.

## II. FACTS

The parties to this appeal have both agreed upon the accuracy of the following statement of facts, which appears in the appeal brief of the Appellant, the City of Memphis[2]:

---

[2] We omit two sentences with which the Appellee takes issue from this recitation of the Statement of Facts. We also omit citations to the technical record, hearing transcripts, trial transcripts, trial exhibits, and deposition transcripts.

On the evening of August 6, 2001, Plaintiff spent several hours at a female friend's apartment in southeast Memphis. Plaintiff does not remember the name of the friend or any of the other guests in the apartment that evening. After spending approximately five hours at the apartment, Plaintiff obtained a ride from a male "associate" of one of the females who was at his friend's apartment. Plaintiff only knew the individual giving him a ride as "D." "D" agreed to drive Plaintiff back to another female friend's residence in north Memphis in a black SUV.

While "D" was driving Plaintiff to his female friend's residence, a police vehicle approached them from behind with its blue lights engaged and pulled the vehicle over on I-240 near the Walnut Grove overpass. While the officer was pulling over the black SUV, "D" informed Plaintiff that the vehicle was stolen. Once the black SUV came to a stop, both "D" and Plaintiff exited the vehicle, ignored the officer's instructions to get back inside, and then fled. Plaintiff ran eastbound across the interstate to Christian Brothers High School, where he hid in a dumpster.

Officer Giannini, who had pulled over the black SUV for speeding, did not pursue either suspect at the time, because he was uncertain if there was anyone remaining in the vehicle. After running the license plate on the SUV, Officer Giannini learned that it had been stolen in a carjacking. This led Officer Giannini to fear that the fleeing suspects might be armed. Officer Giannini then sent out a call over the radio informing other officers that two carjacking suspects were on foot in the area surrounding I-240 and Walnut Grove. Officer Murdock, a "K-9 Officer," responded to the call, searching for the suspects with the aid of his trained dog.

As Plaintiff hid in the dumpster, he was aware that the police were searching for him. After several hours had elapsed, Officer Murdock discovered Plaintiff's hiding place and called Officer Giannini for help. Once Officer Giannini arrived at the dumpster, Officer Murdock ordered Plaintiff several times to come out, but Plaintiff refused to comply. Officer Murdock then reached into the dumpster and pulled Plaintiff out, forcing him to lie down on his stomach. As Office Giannini attempted to handcuff Plaintiff's hands behind his back, Plaintiff began to kick and flail. Officer Giannini then laid on Plaintiff's legs to subdue his lower body, while Office Murdock placed his foot on Plaintiff's back and shoulders to pin down the upper body....

On August 13, 2001, Plaintiff filed an excessive force complaint with the Memphis Police Department arising from his arrest on August 6. The departmental investigation concluded with a finding that Officer Murdock violated DR-305, the departmental policy prohibiting the use of excessive force. The investigation did not specify whether Officer Murdock acted intentionally or negligently. Plaintiff thereafter filed the instant suit ....

**III. ISSUE**

Appellant, the City of Memphis, raises the following issues on appeal:

I.      Whether the trial court erred in admitting Officer Murdock's statement given during the course of the MPD's internal investigation.

II.     Whether the trial court erred in finding that Officer Murdock's actions were negligent.

        A.      Whether the trial court erred in failing to give conclusive effect to Plaintiff's admission that Officer Murdock's actions were intentional.

        B.      Whether the trial court erred in finding that Defendant is liable for Officer Murdock's intentional conduct.

III.    Whether the trial court erred in failing to properly apply the correct standard of care.

**IV. STANDARD OF REVIEW**

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below and there is no presumption of correctness with respect to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.*, 919 S.W.2d 26 (Tenn.1996)** and Tenn. R.App. P. 13(d). The trial court's factual findings are, however, presumed to be correct and we must affirm such findings absent evidence preponderating to the contrary. ***Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn.1993)**.

**V. ANALYSIS**

**I.      Whether the trial court erred in admitting Officer Murdock's statement given during the course of the MPD's internal investigation.**

The City of Memphis maintains that it was improper for the trial court to admit Officer Murdock's written statement, given pursuant to an investigation by the Memphis Police Department's Inspectional Services Bureau, that "it's possible" that he stepped on Mr. McCrary's face while Officer Murdock was placing Mr. McCrary under arrest. Although the trial court misstated the rule number of the rule of evidence upon which it was relying, it is clear from the context, and it is uncontested by the parties to this appeal, that the trial court admitted the statement under Tennessee Rule of Evidence 803(1.2)(D). Rule 803(1.2) reads in its entirety as follows:

> **Admission by Party-Opponent.** A statement offered against a party that is (A) the party's own statement in either an individual or a representative capacity, or (B) a statement in which the party has manifested an adoption or belief in its truth, or (C)

a statement by a person authorized by the party to make a statement concerning the subject, or **(D) a statement by an agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship under circumstances qualifying the statement as one against the declarant's interest regardless of declarant's availability,** or (E) a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy, or (F) a statement by a person in privity of estate with the party. An admission is not excluded merely because the statement is in the form of an opinion. Statements admissible under this exception are not conclusive.

(Emphasis added.) Part D of Rule 803(1.2)(D) sets out three requirements for admissibility: the statement a party seeks to admit must: (1) concern a matter within the scope of the agency or employment; (2) be made during the existence of a the agency or employment relationship; and (3) be made under circumstances qualifying the statement as one against declarant's interest. It is clear that requirements (1) and (2) are met: the matter described in Officer Murdock's statement, the arrest of Mr. McCrary, was within the scope of Officer Murdock's agency or employment, and Officer Murdock was employed by the City of Memphis at the time he made the statement. The City's challenge to the admission of this statement focuses upon requirement (3): whether the statement qualifies as one against Officer Murdock's interest at the time it was made. The City contends that since Officer Murdock was immune from suit under the Governmental Tort Liability Act (GTLA), the statement could not have been against his interest.

We agree with Mr. McCrary that the City's reading of the phrase, "statement ... against the declarant's interest," is too narrow. The statement at issue was taken as part of an internal disciplinary proceeding that could have (and, indeed, did) result in disciplinary action against Officer Murdock. This disciplinary proceeding had the potential to affect Officer Murdock's eligibility for continued employment and promotions. Consequently, we conclude that the statement was against Officer Murdock's interest and was properly admitted by the trial court.

Moreover, it was uncontested at trial that Officer Murdock was deceased. Because he was deceased and unavailable to testify, we conclude that his statement would also be admissible under Tennessee Rule of Evidence 804(3), which provides for the admission of statements against interest when the declarant is unavailable to testify. Rule 804(3) reads, in its entirety:

*Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

For the reasons stated *supra*, we conclude that Officer Murdock's statement was so far contrary to his pecuniary interest that a reasonable person would not have made the statement unless it were true. Furthermore, we believe that his statement that his foot was on Mr. McCrary's neck and his

acknowledgment that his foot might have slipped onto Mr. McCrary's face, could have exposed him to criminal prosecution for assault and battery. For all of these reasons, we conclude that Officer Murdock's statement would be admissible under Rule 804(3).

The City of Memphis cites the case of ***Dailey v. Bateman*, 937 S.W.2d 927, 930 (Tenn. Ct. App. 1996)**, in support of its position that Officer Murdock's statement should not have been admitted into evidence as an admission against his personal interest. In ***Dailey***, plaintiffs sued the defendant city under the GTLA for causing an automobile accident by failing to maintain a stop sign at an intersection. ***Id*. at 928.** The plaintiffs claimed the city had notice of this condition, yet failed to correct it. ***Id*. at 928-9.** The plaintiffs and another witness offered testimony that a police officer, Sgt. Owens, had spoken to them shortly after the accident and told them that the stop sign "had been laying in the ditch for several days and that they knew that it was." ***Id*. at 929.** The trial court admitted this testimony as a statement against interest under Tenn. R. Evid. 803(1.2)(D). The Court of Appeals reversed, holding that Sgt. Owen's statement did not constitute an admission against the defendant city "because we are unable to see how the statement was against his personal interest when it was made." ***Id.***

The situation in *Dailey* bears no relevant resemblance to the facts of the case at bar. In *Dailey*, there is no indication that the officer's statements were made in the course of a disciplinary proceeding or that the officer was placing his employment status, salary, or opportunities for promotion in jeopardy by making the statement. By contrast, in the present case Officer Murdock's statements were made in the context of a disciplinary proceeding that could have serious repercussions for his continued employment and income. Clearly Officer Murdock's admission that "it's possible" that his foot slipped onto Mr. McCrary's face could expose him to disciplinary action for negligence, and thus the statement was against his personal interest. We conclude that the statements were properly admitted as statements against the personal interest of Officer Murdock.

## II.     Whether the trial court erred in finding that Officer Murdock's actions were negligent.

### A.     Whether the trial court erred in failing to give conclusive effect to Plaintiff's admission that Officer Murdock's actions were intentional.

The City of Memphis contends that the trial court erred in failing to give conclusive effect to an "admission" by the Plaintiff that Officer Murdock's actions were intentional. The City points to deposition testimony given by Plaintiff in the course of this litigation. Plaintiff testified, in relevant part, as follows:

Q.      ... Sub-paragraph (a) [of the Complaint] says: Defendant's employees negligently, carelessly, and recklessly used excessive, unnecessary and unwarranted force in effecting the arrest of the plaintiff.

My question to you is, was this an accident, or did the officers do this to you intentionally?

A.      No, this was done purposely.

Q.      So the officer didn't – his foot didn't slip or anything, he purposely put his foot on your face and ground it into the pavement?

A.      Yes.

Q.      That's what you are telling me?

A.      That's exactly what I am saying.

The City argues that this testimony should be given "conclusive effect" as an admission that Officer Murdock acted intentionally. In support of this argument the City cites two cases in which "plaintiffs have made statements negativing their negligence claims," ***Diviney v. Vineyard*, No. 01-A-01-9012-CV00458, 1991 WL 66480 (Tenn. Ct. App. May 1, 1991)**, and ***Cherry v. Rollins*, No. 88-12-11, 1988 WL 49993, at \*6 (Tenn. Ct. App. May 20, 1988)**. In both cases the plaintiffs testified unequivocally as to the *actions* of the defendants, and the testimony was uncontradicted by other evidence, with the effect that the trial courts recognized that any possibility that the defendants had acted negligently was eliminated.

In his appeal brief, Mr. McCrary argues that ***Diviney*** and ***Cherry*** are inapplicable here: "In each of the cited cases, the plaintiff was in a position to know with certainty the facts and circumstances leading up to and resulting in their respective accidents and to testify with authority regarding such facts and circumstances. Unlike the plaintiffs in the cited cases, plaintiff in the instant case was not in a position to know with any specificity, particularity, or certainty how Officer Murdock caused the complained of injuries." We agree with Mr. McCrary. In *Diviney* and *Cherry*, the plaintiffs testified to actions they observed by the defendants and the conditions in which the accidents took place. The actions of the defendants which were observed by the plaintiffs removed any possibility of negligence, and this testimony was uncontradicted by other evidence. In the case at bar, the situation is quite different. The supposed "admission" to which the City believes the trial court should have given conclusive effect concerns the *mental state* of Officer Murdock, not Officer Murdock's actions. We conclude that Mr. McCrary was not in a position to know with certainty whether Officer Murdock's actions were negligent or intentional. Mr. McCrary's position during the arrest procedure, face-down on the pavement, makes it unlikely that Mr. McCrary would be capable of observing Officer Murdock's behavior closely or carefully enough to know for sure whether the officer's application of his foot to Mr. McCrary's head was negligent or intentional. Furthermore, the other evidence adduced at trial serves to contradict Mr. McCrary's statement that Officer Murdock's behavior was intentional. For example, Officer Murdock stated that "it's possible" that he stepped on Mr. McCrary's face while he was placing Mr. McCrary under arrest. The City argues that this "statement only goes to the issue whether his foot came in contact with Plaintiff's face. It in no way informs a determination whether such contact was negligent, intentional, or merely accidental." We disagree with the City on this point; the implication of Officer Murdock's statement is that, if his foot did in fact come into contact with Mr. McCrary's face, it did so accidentally in the

course of the struggle. Furthermore, Officer Giannini, the officer who assisted Officer Murdock in the arrest of Mr. McCrary, testified that he never saw Officer Murdock kick or strike Mr. McCrary.

Because Mr. McCrary was not in a position to know, with certainty, what Officer Murdock's mental state was during the events at issue here, and because other evidence (the statement of Officer Murdock and the testimony of Officer Giannini) contradicts the assertion that the action was intentional, we conclude that the trial court did not err in failing to give conclusive effect to Mr. McCrary's opinion testimony that Officer Murdock's action was intentional.

**B.      Whether the trial court erred in finding that Defendant is liable for Officer Murdock's intentional conduct.**

Because we conclude that the trial court did not err in finding that Officer Murdock's conduct was negligent, we pretermit any discussion of this issue.

**III.      Whether the trial court erred in failing to properly apply the correct standard of care.**

The City of Memphis next argues that the trial court erred in failing to apply the proper standard of care in analyzing Mr. McCrary's negligence claim. The City points to the language used by the court at trial: "[N]either side has given me any expert proof as to the propriety or lack of propriety of Mr. Murdock putting his foot on the suspect's back and shoulder and neck, possibly face, but [I will be] using a reasonably necessary standard under the circumstances." The City states, "[i]t appears from this language the trial court employed a 'reasonably necessary' standard to determine whether Officer Murdock acted negligently."

The City contends that a "reasonably necessary" standard is not the correct standard to use in evaluating the propriety of a police officer's use of force. Citing **Graham v. Connor, 490 U.S. 386 (1989)**, the City argues that the "reasonably necessary" standard it contends was used by the trial court departs from the standard enunciated in *Graham* in several ways. First, the City argues that *Graham* "does not require an officer's use of force to be necessary, nor must it be the most prudent of available alternatives." The City offers the following quote from **Graham**:

> [A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard... The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight ... the "reasonableness" inquiry in an excessive force case is an objective one...

*Id*. **at 395-96**. Thus, the City asserts that the court erred in focusing on the necessity of the use of force, and the City insists instead that the court should have focused solely on whether the use of force seemed objectively reasonable at the time. The City points in particular to this statement by the court at trial as evidence of this erroneous standard: "Mr. Giannini had a sufficient element of control

[over Plaintiff's person] ... as to call into question the reasonableness and necessity of [Officer Murdock's] foot on the suspect's back, neck and/or face considering other reasonable alternatives available to Mr. Murdock to assist such as was necessary in the safe apprehension of the suspect." The City points out that the U.S. Supreme Court has stated that the use of force need not be necessary, to be reasonable, citing **Saucier v. Katz, 533 U.S. 194, 204 (2001)**, for this proposition.

The City further argues that the trial court failed to consider the correct factors set forth in **Graham v. Connor**, such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." **Graham, 490 U.S. at 396**. The City argues that the trial court's analysis failed to place proper weight on the exigent circumstances facing Officers Murdock and Giannini.

A third argument advanced by the City is that the trial court impermissibly shifted the burden of proof to the Defendant. "Rather than requiring Plaintiff to show that Officer Murdock's use of force was objectively unreasonable—or, under the rubric of the lower court's standard, reasonably unnecessary—the court instead phrased its decision in terms of Defendant's inability to affirmatively prove the *reasonableness* of Officer Murdock's conduct." The City argues that "[t]he court should ... ask of Plaintiff why Officer Murdock's conduct was *unreasonable*."

We first consider the City's claim that the court's use of a "reasonably necessary" standard was in error. It is true that courts must ask, when evaluating whether the use of force applied by law enforcement officers was excessive, whether such force was "objectively reasonable." However, a review of authorities on this question persuades us that the trial court did not err in analyzing the question in the case at bar. A leading treatise explains the proper standard as follows:

> The measure of force permissible in making an arrest is that which an ordinary, prudent, and intelligent person with the same knowledge, and in the same situation as, the arresting officer would have deemed necessary, or such force as the officer in the exercise of a reasonable judgment believes it necessary. The officer is not required to determine at his or her peril the precise amount of force necessary in each instance and to use that much and no more; rather, the officer may be guided by the reasonable appearances and the nature of the case in determining the amount of force to be used.

6A C.J.S. *Arrest* § 53 (2004). The standard articulated in this treatise demonstrates that the court must indeed apply an "objectively reasonable" standard, as the City asserts—but whether a given amount of force is "objectively reasonable" depends upon whether such force, in the reasonable judgment of the officer, seems necessary. This standard has been approvingly cited by the 6th Circuit in several cases. *See* **Miller v. Cate, 86 Fed.Appx. 830, 833 (6th Cir. 2004)**; **Anderson v. Antal, 191 F.3d 451, **6 (6th Cir. 1999)**; **Edwards v. U.S., 38 F.3d 1215, **3 (6th Cir. 1994)**. Therefore, we conclude that the trial court did not err in applying a "reasonably necessary" standard in its analysis of the excessive force claim of Mr. McCrary.

With respect to the next two arguments advanced by the City—that the trial court failed to consider the exigent circumstances facing the officers when they arrested Mr. McCrary, and that the trial court impermissibly shifted to the City the burden of proof concerning the reasonableness of the officers' conduct—we find it helpful to quote at length from trial court's remarks as found in the trial transcript. In these remarks, the trial court explains its finding that Officer Murdock acted negligently in using excessive force against Mr. McCrary:

[I]t is the court's view that Mr. Murdock acted negligently. Now, the standard that I have to use in this case is not to be absolutely clear as to what happened out there that night, but the only responsibility that Mr. McCrary has is to persuade the court by the barest tipping of the scale between the two versions, that is, the plaintiff's version and the defense's version of what happened. And neither side has given me any expert proof as to the propriety or lack of propriety of Mr. Murdock putting his foot on the suspect's back and shoulder and neck, possibly face, but using a reasonably necessary standard under the circumstances. You have got Mr. Giannini there who helps to pull this man out, actually appears that what happened was that Mr. Giannini—Mr. Murdock ran around, came around to the other side and grabbed him and pulled him out. Now whether he was going to come out or not—of course, Mr. Giannini and Mr. Murdock say that he wasn't. But apparently he made some effort to move. He stood up, according to Mr. Murdock, and froze. So Mr. Murdock doesn't say that he was making any threatening move after standing up in the dumpster. Of course Mr. Murdock, as I have already noted, had good reason to be apprehensive as to whether this man was armed. So they pull him out of the dumpster and threw him on to the ground. That's what seemed to be undisputed. And Mr. Giannini lands on his legs. And while there is no testimony, if he is trying to handcuff him, then I'm assuming by this time he must have put his gun back in his holster. It is hard to imagine him trying to handcuff the suspect with a gun in one hand and handcuffs in the other if the suspect, as both officers testified, was flailing about with his legs. But from the testimony of Mr. Giannini—and he was, outside the plaintiff, he is our only live witness in this trial that was on the scene. We don't have any of the other officers, although apparently most of them came up after Mr. McCrary was handcuffed.

But I can't understand why it would have been reasonable if Mr. McCrary—if Mr. Giannini is on his legs, he's landed on his stomach, presumably one or both hands are either to the side or behind him if Mr. Giannini is trying to cuff him, why it was reasonable for Mr. Murdock to use his foot on the suspect's back, neck or shoulder as opposed to using his hands and body perhaps to subdue the suspect which certainly would have given him more control. And there is no suggestion at this point from Mr. Giannini, who was here to testify live, that there was any apprehension at that point in time, number one, about Mr. McCrary being armed or, even, about the risk of Mr. McCrary grabbing one of their pistols. And so it would appear to me that putting his foot on a man who is already being laid on by one officer who—in the

-10-

hand area of the suspect, because he is the one trying to handcuff the suspect. Mr. Murdock is standing, presumably, and he is attempting to exert his control with his foot, and that's all we know as far as his control effort.

I wondered, because the dog was there—Mr. Murdock said, well, the dog was there, whether maybe he was using his foot because one hand was occupied holding the dog, but then when I looked back at Mr. Murdock's testimony he says that apparently he held the dog in abeyance by commands. There was no indication that he didn't have both hands available to use. Mr. Giannini testified today that he did not detect Mr. McCrary moving from the waist up. Now, it doesn't mean that he—of course Mr. McCrary testifies that he wasn't moving and Mr. Giannini says that he didn't detect him moving from the waist up.

Now, Mr. Murdock, when he was asked whether he stepped on Mr. McCrary's face—I already referenced this—he said it is a possibility while he was struggling and I'm trying to hold his neck down. Now I don't know what kind of struggling he is talking about. If you think of what Mr. Giannini said, I don't know whether he is talking about the struggling which Mr. Giannini said, that that is, his legs were kicking and he laid on his legs—that's Mr. Giannini.

Mr. Murdock, the only kind of struggle he is specific about is the power struggle to get his handcuffs on him. The question asked Mr. Murdock "Was Mr. McCrary resisting you in any way?"

"Answer: He was struggling at that time to keep from being handcuffed."

"Question: Was he given verbal commands?"

"Answer: He was given verbal commands, which he ignored."

"Who actually handcuffed Mr. McCrary?"

"Officer Giannini."

Well now if Mr. Giannini is the one struggling to handcuff him, and does handcuff him but doesn't see any struggling of the upper part of his body, then I have to reasonably conclude that the definition or description of the struggle given us by Mr. Giannini is by a preponderance of the evidence the more reasonable characterization of the struggle. But that being the case, then it would appear that at least Mr. Giannini had a sufficient element of control in laying on the suspect in trying to handcuff him and finally handcuffed him as to call into question the reasonableness and necessity of the foot on the suspect's back, neck and/or face considering other reasonable alternatives available to Mr. Murdock to assist such as was necessary in the safe apprehension of the suspect.

-11-

Now, in looking at the Exhibit 2, the two photographs of the suspect's left jaw, it looks to me ... at least looking at this photograph, that the nature of these abrasions on the side of the face of the plaintiff are more likely to have come from the face being rubbed or ground somewhat onto the pavement from external pressure versus a bruising that would come if you were thrown to the pavement where his face would hit the pavement, because the bruises or abrasions are both on the cheekbone, above the cheekbone and below the cheekbone. And, of course, the cheekbone, it appears, in looking at this man, has the most exterior or protrusive of the facial—the face, so that it would be the first to hit. But to have the abrasions both below and above the cheekbone would quite probably, in the court's mind, be something more than just a flush strike of the face against the pavement but would require some agitation of the face on the pavement, and the only way I can, again, by the preponderance of the evidence, conceive that under the circumstances of this arrest, would be from pressure of Mr. Murdock's feet or foot with some probable movement of that foot on the face or head of the suspect.

I do not think that the conduct of Mr. Murdock, when given the assessment of whether it was negligent or willful, as we discussed in legal questions—obviously there is a certain willfulness in the movements of a person and activities of a person even when that willfulness constitutes negligence in the final conduct. The question is whether it was willful use of excessive force. And I don't have any—between the two choices, between whether or not it was making unreasonable or less-than-reasonable choices as to how to properly handle the suspect it would appear to the court that that would be the case as opposed to willful misuse of force in the apprehension of the suspect. He made a poor choice of the choices available to him as to how he could assist and apprehend this suspect, and he made a negligent choice.

These remarks persuade us that the trial court properly considered the exigent circumstances facing the officers as they arrested Mr. McCrary. We note that, in these remarks, the trial court explains how it reviewed the key evidence brought forth at trial concerning the incident—including Officer Murdock's statement, the testimony of Mr. McCrary, and the testimony of Officer Giannini—and how it determined which account of the struggle is more credible. Further, we note that the trial court acknowledges in its remarks that Officer Murdock "had good reason to be apprehensive as to whether this man was armed." It is clear, then, that the court fully considered the exigent circumstances of this arrest. Moreover, based on the trial court's statement that "Mr. McCrary has ... to persuade the court by the barest tipping of the scale between the two versions [that] the plaintiff's version and the defense's version of what happened," we conclude that the trial court properly recognized that the burden of proof was on Mr. McCrary. Therefore, we conclude that the trial court did not err in its analysis of Mr. McCrary's negligence claim against the City of Memphis.

### VI. CONCLUSION

-12-

For all the foregoing reasons, the trial court's judgment is affirmed. Costs in this appeal are assessed against the City of Memphis, and its surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.