Melinda H. Scott DAILEY and husband,
Thomas Dailey, Plaintiffs/Appellees,

v.

Lois J. BATEMAN and husband,
Ricky Bateman, Defendants

and

City of McKenzie, Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Aug. 16, 1996.

Application for Permission to Appeal
Denied by Supreme Court
Nov. 25, 1996.

W. Gary Blackburn, Blackburn, Slobey, Freeman & Happell, Nashville, for Defendant/Appellant, City of McKenzie.

Charles L. Hickes, Camden, for Plaintiffs/Appellees.

FARMER, Judge.

Melinda H. Scott Dailey and husband, Thomas Dailey (the "Daileys" or "Plaintiffs") sued the City of McKenzie (the "City" or "Defendant") under the GTLA, T.C.A. §§ 29–20–101–407 (1980 & Supp.1995) for damages arising from an automobile accident that occurred within the City. Plaintiffs also sued Lois J. Bateman and Ricky Bateman.[1] Ms. Bateman made claim against the City for property damage.

City appeals the judgment of the trial court finding City 60% at fault and Lois J. Bateman 40% at fault. The trial court found Melinda Scott Dailey's damages to be $20,000 and her husband's to be $1,000.00. Judgment was awarded against the City for $12,000 in favor of Ms. Dailey and $600 in favor of Mr. Dailey. Based on the court's finding that Lois Bateman sustained damages of $2,525, judgment was entered in her favor against the City for $1,515.

The following facts are undisputed: On December 20, 1992, Mrs. Dailey was traveling south on North Park Street. At the same time, Mrs. Bateman and her thirteen year-old son, Jachin Bateman, were traveling east on Locust Avenue in the City. Traffic on Locust Avenue is directed to stop before proceeding through the intersection of Locust Avenue and North Park Street by a stop sign placed at the southwest corner of the intersection. However, traffic on North Park Street is not interrupted. Mrs. Bate-

man did not stop before entering the intersection and collided with Mrs. Dailey's vehicle as it proceeded through the intersection. As a result of the collision, Mrs. Dailey was injured.

There were no other eyewitnesses to the accident. An investigation of the accident conducted immediately after the accident by Sgt. Gene D. Owen of the City police department revealed that the stop sign, which had been placed by the City at the southwest corner of the intersection, was lying in a drainage ditch adjacent to the intersection. It appeared to Sgt. Owen that the sign had been down prior to the accident.

In their complaint, the Daileys alleged that Mrs. Bateman was liable for their damages that were proximately caused by the negligent operation of her vehicle and her violation of traffic laws. The Daileys further alleged that pursuant to T.C.A. § 29–20–203 the City was liable for damages proximately caused by its negligence in allowing a dangerous condition to exist at the intersection.

At trial, the Daileys presented Sgt. Owen, who testified that he had been employed by the City police department for approximately sixteen and one-half years. He testified that when he arrived at the scene of the accident he found the stop sign lying in a ditch adjacent to the intersection. He further stated that it was obvious to him that the sign and the pole had not been knocked down as a result of the accident between Mrs. Dailey and Mrs. Bateman. He could not tell how long the sign had been down. However, Sgt. Owen testified that he did not remember making any statements at the hospital to Mr. Dailey or to Mr. Dailey's uncle, Richard R. Thompson, about the condition of the stop sign prior to the accident.

After Sgt. Owen stated that he did not remember speaking with anyone at the emergency room after the accident, the Daileys presented Richard R. Thompson, who testified that he had a conversation with Sgt. Owen in the emergency room on the date of the accident. Mr. Thompson stated that during that conversation Sgt. Owen told him that the stop sign had been down for a

1. The Daileys' suit against the Batemans was bifurcated.

"couple of days." After Mr. Thompson completed his testimony, Mr. Dailey was recalled and he testified that he had spoken with Sgt. Owen at the suggestion of Mr. Thompson. Mr. Dailey testified that during this conversation, Sgt. Owen told him "that the stop sign was down and that it had been laying in the ditch for several days and that they knew that it was."

For its proof, the City presented Joe Curtis, Public Works Director for the City, who testified that his duties included replacing stop signs. Mr. Curtis also testified that he was familiar with this particular stop sign because it was adjacent to the public works building where he is employed. Mr. Curtis testified that he had driven through the intersection of Locust Avenue and North Park Street at 4:00 p.m. on Friday, December 18, 1992. He stated that to the best of his knowledge the stop sign was in place at that time. He further testified that the Public Works Department is closed over the weekend and that he did not have knowledge that the stop sign was down until the following Monday after the accident.

The City next offered the testimony of Mr. Jim Sydnor, the chief of police for the City, who testified that City police officers are instructed to report defective street signs to the police dispatcher. He testified that the dispatcher is instructed to make a record of all of these reports and convey them to the City street department. Chief Sydnor testified that there were no City records concerning the stop sign in question for the period prior to the accident.

The trial court found that the City had both actual and constructive notice that the stop sign had been down at the intersection for several days prior to the accident. The court also found that Sgt. Owen had made an appropriate report to appropriate authorities. The court was apparently referring to the post accident report as there is no evidence in the record that Sgt. Owen reported the stop sign down prior to this accident.

The City appeals the trial court's ruling, presenting the following issues for review:

1. Whether the Court erred in finding that the City of McKenzie had adequate and timely notice of a defect in a street or highway.

2. Whether the [trial court's] finding of $20,000 in damages for [Mrs. Dailey] is supported by a preponderance of the evidence.

■ As its first issue, the City argues that the trial court erred in determining that the City had adequate and timely notice of the defective stop sign. Under T.C.A. § 29–20–203 (Supp.1995):

(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.

(b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by Sec. 29–20–302 [repealed].

Under this statute, a party must prove that a governmental entity had actual or constructive notice of a defective, unsafe or dangerous condition before sovereign immunity can be waived. *Lee v. City of Cleveland,* 859 S.W.2d 347, 349 (Tenn.App.1993); *Smith v. City of Covington,* 734 S.W.2d 327, 329 (Tenn.App.1985).

In *Kirby v. Macon County,* 892 S.W.2d 403 (Tenn.1994), the court defined "actual notice" as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby,* 892 S.W.2d at 409. (citing *Texas Co. v. Aycock,* 190 Tenn. 16, 27, 227 S.W.2d 41, 46 (1950)). In the same case, the Court defined "constructive notice" as "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Id.* at 409 (citing *Black's Law Dictionary,* 1062 (6th ed. 1990)).

In the instant case, the trial court found that the City had both actual and construc-

tive notice that the sign was down prior to the accident. The City argues that the Daileys failed to present sufficient proof of either actual or constructive notice. Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. Rule 13(d) T.R.A.P.

■ At trial, Sgt. Owen testified that he did not remember speaking with Mr. Dailey or Mr. Thompson at the hospital. However, Sgt. Owen did not deny that the conversations took place. Mr. Thompson and Mr. Dailey testified about the contents of their conversations with Sgt. Owen. Mr. Dailey testified that Sgt. Owen told him at the hospital that "the stop sign was down and that it had been laying in the ditch for several days and that they knew that it was."

The City argues that the trial judge erred as a matter of law in determining that Sgt. Owen's prior inconsistent statement could be used as substantive evidence to show that the City had actual notice of the defective sign. The City contends that this evidence should have been considered for impeachment purposes only and should not have been considered as substantive evidence that the City had actual notice of the defective sign. The City further argues that the admission of such proof as substantive evidence is reversible error in this case since the Daileys' only proof of actual notice on behalf of the City was Sgt. Owen's prior inconsistent statements. The Daileys, on the other hand, argue that the prior inconsistent statements of Sgt. Owens can be considered as substantive evidence of notice because they are an admission against interest made by an agent of the City.

■ It is settled in this State that prior inconsistent statements of a witness are admissible for the purposes of impeachment and testing the credibility of the witness, but are not to be considered as substantive evidence of the truth of the matter asserted therein. *Jones v. Lenoir City Car Works*, 216 Tenn. 351, 392 S.W.2d 671 (1965); *Rhea v. State*, 208 Tenn. 559, 347 S.W.2d 486

(1961); *King v. State*, 187 Tenn. 431, 215 S.W.2d 813 (1948); *Moseley v. Goodman*, 138 Tenn. 1, 195 S.W. 590 (1917). It is further settled that evidence of prior inconsistent statements can be offered for the purpose of impeachment when the witness does not admit or deny making a contradictory statement, but merely testifies that he does not remember making the statement. *Puckett v. Laster*, 56 Tenn.App. 66, 405 S.W.2d 35 (1965).

■ But, "[a]ny statement, whether oral or written, made by or attributable to a party to an action, which constitutes an admission against his interest and tends to establish or disprove any material fact in the case, is competent evidence against him in such action." *Jones*, 392 S.W.2d at 673.

Thus, it is clear that the alleged prior inconsistent statement of Sgt. Owen could have been considered substantive evidence if it did in fact constitute an admission attributable to the City. Under the Tennessee Rules of Evidence, statements made by a party's agent may be admissible as admissions of a party under an exception to the hearsay rule found in Rule 803(1.2)(D). Under Rule 803(1.2)(D), the hearsay rule does not apply to "a statement by an agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship under circumstances qualifying the statement as one against the declarant's interest regardless of declarant's availability." T.R.E. 803(1.2)(D).

To qualify under section (D), the statement (1) must concern a matter within the scope of the declarant's agency or employment; (2) must have been made while the agency or employment relationship existed; and (3) must be against the declarant's interest when made. T.R.E. 803(1.2)(D). We do not believe that Sgt. Owen's statement constitutes an admission against the City under this rule because we are unable to see how the statement was against his personal interest when it was made. Consequently, we hold that Sgt. Owen's statement is not an admission against the interest of the City. As such, Sgt. Owen's prior inconsistent statement could not be properly used as substantive

evidence of actual notice on behalf of the City.

■ Inasmuch as Sgt. Owen's prior inconsistent statement was the only evidence of actual notice to the City, we hold that the trial court erred in determining that the City had actual notice of the defective sign. We turn now to the question of whether there was sufficient proof to support a finding of constructive notice on behalf of the City. We find that there was no competent proof of constructive notice offered. While Jachin Bateman testified in his deposition that the sign had been down for a month prior to the accident, he later testified on direct examination that he did not remember whether the sign was down a month prior to the accident or not. He further testified that he might have been going down a different road when he saw the downed sign. He also testified on cross-examination that he had not seen the sign immediately prior to the accident because he had been looking down at the moment that he and Mrs. Bateman were approaching the intersection. On the other hand, Mr. Curtis, Public Works Director for the City, testified that he had driven through the intersection at 4:00 p.m. on Friday, December 18, 1992. He stated that to the best of his knowledge the stop sign was in place at that time. He further testified that the Public Works Department is closed over the weekend and that he did not receive any notice that the stop sign was down until the Monday following the accident.

We are unable to find that the evidence preponderates in favor of the trial court's finding that the City had constructive notice of the defective sign. As such, the claims under the Governmental Tort Liability Act must fail. Consequently, we deem it unnecessary to address Defendant's second issue.

The judgment of the trial court is reversed. Costs on appeal are taxed to the Appellees, for which execution may issue if necessary.

HIGHERS, J., and TOMLIN, Senior Judge, concur.