# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JANUARY 1999 SESSION



**FILED**

**April 29, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| | ) |
| Appellee, | ) C.C.A. NO. 02C01-9805-CC-00151 |
| | ) |
| | ) Henry County |
| V. | ) |
| | ) Honorable Julian P. Guinn, Judge |
| | ) |
| **DONALD RAY SMITH,** | ) (Aggravated Sexual Battery) |
| | ) |
| Appellant. | ) |


FOR THE DEFENDANT:

GUY T. WILKINSON
District Public Defender

W. JEFFREY FAGAN
Assistant District Public Defender
117 North Forrest Avenue
Camden, TN 38320

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

CLINTON J. MORGAN
Counsel for the State
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN 37243-0493

ROBERT "GUS" RADFORD
District Attorney General

STEVE GARRETT
Assistant District Attorney General
P. O. Box 94
Paris, TN 38242


OPINION FILED: _____


**REVERSED AND DISMISSED**


**JOHN EVERETT WILLIAMS,**
Judge

# O P I N I O N

The defendant, Donald Ray Smith, appeals as of right his conviction by a Henry County Circuit Court jury of aggravated sexual battery, a class B felony. The trial court sentenced the defendant to eight years in the Tennessee Department of Corrections as a range I standard offender. The defendant argues that the evidence at trial was insufficient as a matter of law to sustain the conviction and that the trial court erred by denying the defendant's motion for judgment of acquittal. We REVERSE the trial court's judgment and DISMISS the case.

## BACKGROUND

After establishing general background for the alleged victim, the state's first witness, the state's examination began as follows:

> Q. I want to go back, if we could, to July, 1996. I've told these ladies and gentlemen of the jury that you say your father has done some things to you that he shouldn't have. I want you to tell the ladies and gentlemen of the jury what he did to you.
> A. He didn't do anything.
> Q. He didn't do anything. That is your response to this question under oath here today?
> A. Yes.
> Q. Now, on July the 30th, 1996, did you have occasion to tell your mother, Margaret Smith, that your father had touched you?
> A. Yes.
> Q. Touched you in a bad way?
> A. Yes.

The alleged victim had told her mother that the defendant, the above-mentioned father, had reached inside her garments and touched her private parts in January 1996, when she was twelve years of age. She had further stated that the defendant offered her candy and money for her silence. The alleged victim also described the incident to Henry County Sheriff's Department Investigator Gary Vandiver and to Carolyn Jean Gore, an investigator with the Department of Children Services.

At trial, the state proceeded from the above initial testimony through the details of her original accusation. The alleged victim testified that the developed narrative correctly reflected her original accusation, but she completely and unequivocally maintained that the incident did not occur.

After her denial, the state posed several questions regarding what she told her mother. For example: "Now, I believe you told your mother that you were laying in the living room floor that particular evening. Is that correct?" The state started omitting the language that restricted its questions to what she told her mother, versus what actually happened, and the alleged victim reasserted her denial:

> Q. And ultimately you told him no, stop, don't do that?
> A. Yes. But that didn't happen.
> Q. But you told your mother on July the 30th, 1996 that he ran his hand underneath your shorts, underneath your underwear and touched, I believe your words were, your privates?
> A. Yes.

She explained that her older sister, who had been dating a boy of whom the defendant disapproved, had offered her about twenty dollars for accusing the defendant.[1]

On cross examination, the alleged victim affirmed her retraction:

> Q. Okay, [alleged victim], General Garrett has asked you several questions. He's gone through what you told your mom back in July of '96, remember?
> A. Yes.
> Q. And you're telling this jury here today that didn't happen?
> A. Yes.
> Q. Has anyone -- has your dad or has your mom or has anyone else talked to you and tried to change -- and got you to change your mind and tell these people that it didn't happen?
> A. No.

---

[1] Direct examination revealed that the alleged victim advised the prosecutor several days prior to trial that the touching did not occur and that this older sister persuaded her to accuse the defendant.

Q. So you're saying that you are telling these people the truth here today when you say that this didn't happen?

A. Yes.

Q. And, once again, why did you first say that it did happen?

A. Because my sister, she -- she wanted to date Bill Smith and my dad wouldn't let her. And she said she would pay me money if I said that.

. . . .

Q. Now, you say now today you're telling these twelve people that your dad never has touched you in your private parts?

A. Yes.

Q. And no one has tricked you or promised you anything or threatened you or told you anything to make you change your story?

A. No.

Q. You're telling the jury the truth here today?

A. Yes.

. . . .

Q. [Alleged victim], it's very, very important because these twelve people right here have a tough decision that they have to make today, and a lot of that is going to rest upon what you tell them -- it's very important that you tell them the truth. Do you understand that?

A. Yes.

Q. And what you're telling everyone here today is the statement that you gave to Ms. Gore and to Officer Vandiver and what you told your mom that that was made up by you and your sister?

A. Yes.

Q. And that it didn't happen?

A. Yes.

Q. Your father has never touched you in your private area. Is that what you're telling these people today?

A. Yes.

The state did not redirect but called three other witnesses. The alleged victim's mother testified that the alleged victim told her about the touching incident in July 1996. The mother also testified that on several subsequent occasions the alleged victim denied that the touching had occurred. Gore testified that the alleged victim described the incident to her, including the offered candy and money. Gore further testified that no physical proof of molestation was evident but that such absence is typical under these circumstances. Investigator Vandiver testified that the alleged victim had stated that the defendant had touched her private parts. Vandiver further testified that the alleged victim later advised him that the incident did not occur. Vandiver

-4-

produced a transcript of a recorded interview with the defendant, during which the defendant, after waiving his right to have counsel present, admitted to his touching the alleged victim's private parts in January 1996. The defendant cried during the interview and expressed regret that the touching had occurred. Vandiver also produced a statement, signed by the defendant, in which the defendant admitted touching the alleged victim's genital area until she asked him to stop in January 1996. The defendant did not testify at trial.

## STANDARD OF REVIEW

The defendant submits that the evidence was insufficient as a matter of law to sustain his conviction. When an appellant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This Court grants the appellee the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the trier of fact. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); see also State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). A jury verdict for the state accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). A guilty verdict also replaces the defendant's presumption of innocence with a presumption of guilt. See State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A defendant challenging the sufficiency of the evidence carries the burden of illustrating why the evidence insufficiently supports the verdict. See State v. Freeman, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

**ANALYSIS**

The trial court convicted the defendant of aggravated sexual battery, an "unlawful sexual contact with a victim by the defendant" accompanied by one of four enumerated circumstances. Tenn. Code Ann. § 39-13-504(a). The Code states the relevant circumstance: "The victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). The victim testified that she was twelve years of age when the incident occurred, and nothing in the record challenges this statement. Therefore, the pertinent circumstance applied if a rational trier of fact could have found that the evidence sufficiently established that sexual contact occurred. Sexual contact "includes the intentional touching of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification," and the term "intimate parts" specifically comprises the genital area. Tenn. Code Ann. § 39-13-501(2), (6).

This Court must now determine if sufficient evidence supports this conviction under the pertinent statute. At trial, the state entered both the defendant's signed statement and a transcript of a separate interview with the defendant. In the transcript, the defendant waived his right to counsel and admitted his inappropriately touching the victim in January 1996, under circumstances corroborating the victim's original claim. In this interview, the defendant indicated remorse and shame for his actions. In the signed statement, the defendant admitted touching the victim's genital area until she asked him to stop. Both these inculpatory statements are confessions. See Helton v. State, 547 S.W.2d 564, 566 (Tenn. 1997) (A confession is a statement by an accused admitting that he engaged in conduct constituting a crime. An admission is acknowledgment by an accused of certain facts that, together with other facts, tend to establish his guilt.).

Some evidence must establish a corpus delicti, thereby corroborating and properly sustaining a conviction based on such inculpatory statements. See State v. Ervin, 731 S.W.2d 70, 72 (Tenn. Crim. App. 1986). A corpus delicti indicates that someone, not necessarily the accused, actually committed a charged crime, and an accused need not be connected to the established crime by any evidence other than his own confession. See Taylor v. State, 479 S.W.2d 659, 661 (Tenn. Crim. App. 1972). A rational trier of fact considering the statements of accusation as substantive evidence in conjunction with the defendant's inculpatory statements could have concluded that the defendant actually touched the alleged victim's private parts. On this evidence, a rational trier of fact could have further concluded that prurient interest motivated the defendant and that the evidence satisfied beyond a reasonable doubt the elements of the charged crime.

Despite the inculpatory statements, the defendant proposes that several factors preclude a finding of sufficient evidence:

1. The investigating representative from the Department of Human Services presented no physical proof of an aggravated sexual battery.
2. An investigating police officer testified that the victim advised him that the alleged touching did not occur.
3. The victim's mother testified that the victim retracted her accusation on at least two occasions and that the victim stated that she fabricated the incident to facilitate her older sister's dating a boy of whom the defendant disapproved.
4. The victim herself testified that the incident did not occur and that she had fabricated the incident on behalf of the older sister.

Because the definition of sexual battery comprises "touching," lack of physical evidence of contact is not determinative. Gore testified that physical evidence is typically absent in this type of sexual battery case. Therefore, this factor, on its own, does not preclude a finding of evidence sufficient to sustain the conviction.

The defendant's remaining enumerated observations invoke this Court's questioning the characterization of the testimony of the alleged victim's prior statements, those statements being issued out of court and free from oath. In the record submitted to this Court, the testimony regarding the alleged victim's prior statements of accusation could not have been substantive. Rather, this evidence constituted prior inconsistent statements that, absent any applicable hearsay exceptions, were competent only for impeaching the alleged victim's retractions.[2] See Tenn. R. Evid. 613; see also Tenn. R. Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."). Prior inconsistent statements are not substantive evidence. See King v. State, 215 S.W.2d 813 (Tenn. 1948); Mosely v. Goodman, 195 S.W. 590 (Tenn. 1917); Dailey v. Bateman, 937 S.W.2d 927, 930 (Tenn. Ct. App. 1996).

Our state Supreme Court has addressed the admissibility of such evidence in a comparable case. In King, 215 S.W.2d at 814, a trial court convicted a defendant of incest with his daughter, based on his confession and on a statement from that daughter. The daughter, technically an accomplice under the law at that time, repudiated her statement while on the stand at trial, and the trial court "carefully limited the purpose for which [her] pretrial confession was admissible." Id. at 814-15. The King defendant's confession was independently insufficient for conviction. The daughter's out-of-court statement, recanted on the stand, constituted the only possible corroborative evidence, and the trial court's instruction properly precluded that application of the statement. See id. at 814, 815.

The issue of "fresh complaint" did not arise at trial in the instant case, but our state's Supreme Court has addressed issues paralleling our present inquiry

_____

[2] Counsel generally establish a proper foundation for impeachment by a prior inconsistent statement by eliciting from witnesses either denial or lack of recollection of prior out-of-court statements. See Puckett v. Laster, 405 S.W.2d 35, 39 (Tenn. Ct. App. 1965). However, a party surprised by testimony may ask a witness about a prior contradictory statement and thus explain the contradiction. See Rhea v. State, 347 S.W.2d 486, 488 (Tenn. 1961).

in the context of that particular doctrine, and those decisions preclude certain characterizations of the prior statements. The "fresh complaint" doctrine allows a prosecutor to enter the fact of a complaint of a sexual offense reported some time after the actual offense. See State v. Kendricks, 891 S.W.2d 597, 602-03 (Tenn. 1994). Such evidence may be "admissible as substantive evidence if it satisfies some hearsay exception and as corroborative evidence if it satisfies the prior consistent statement rule." State v. Livingston, 907 S.W.2d 392, 395 (Tenn. 1995) (emphasis added). Therefore, "fresh complaint" evidence does not avoid the general requirements for qualifying as substantive evidence.

Livingston and the subsequent line of cases establish additional propositions relevant to the instant case. First, counsel offering "fresh complaint" testimony as prior consistent statements must establish a foundation. "When the credibility of a witness is impeached with the suggestion that the testimony is fabrication or based on faulty recollection, prior inconsistent statements may be introduced for the sole purpose of corroborating the testimony of the witness." State v., Robinson, 971 S.W.2d 30, 43 (Tenn. Crim. App. 1997) (emphasis added). In the instant case, the state did not accuse its witness, the alleged victim, of lying or of possessing a faulty memory. The state was not rehabilitating the witness after an attack on her credibility, and the evidence does not qualify as prior consistent statements. Even if the statements constituted prior consistent statements, then, absent a hearsay exception, that testimony would still not be substantive.

Further, the third party testimony does not qualify as fresh complaint evidence. Generally, a party can not prove prior inconsistent statements by testimony from other parties. See Rhea v. State, 347 S.W.2d 486, 488 (Tenn. 1961). In Livingston, a six year old victim advised her school guidance counsel that she had engaged in fellatio with her father, but that counselor's testimony at trial "did not qualify as fresh-complaint evidence." Livingston, 907 S.W.2d at 395.

Gore's and Vandiver's testimony, relating the alleged victim's statements to them regarding the accusation and accompanying details, may prove neither the event in question nor prove the alleged victim was being truthful when she originally accused the defendant.

Finally, the "fresh complaint" doctrine does not apply if an alleged victim/witness was under thirteen years of age at the time of the alleged offense. See Livingston, S.W.2d at 395 and State v. Schaller, 975 S.W.2d 313, 320-21 (Tenn. Crim. App. 1997). Therefore, the 'fresh complaint" doctrine is inapplicable in the instant case.

Because the statements of accusation are not substantive evidence, the defendant's inculpatory statements are the only substantive evidence in the record before this Court. However, the defendant neither objected to the offered prior inconsistent statement evidence nor requested a contemporaneous limiting instruction. Even absent a special request, such omission may constitute reversible error. See State v. Reece, 637 S.W.2d 858, 861 (Tenn. 1982). The Reece opinion states that a trial court's omitting a limiting instruction as regards impeachment testimony may constitute reversible error, even absent a special request or objection. The Reece opinion further cites the King opinion as an example of a trial court's properly limiting such evidence. However, in Reece the defendant raised the issue of the omission on appeal. Although the defendant in the instant case alleges that the evidence at trial did not support a conviction, he does not specifically invoke the evidentiary status of the prior inconsistent statements as an issue.

This Court generally reviews only issues presented. See Tenn. R. App. P. 13(b). However, under limited circumstances this Court may consider an issue not formally presented. See id.; see also Tenn. R. Crim. P. 52(b). Under the applicable standard, the error must constitute "plain error," affecting a

"substantial right" of the accused.  State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994).   The determinative factors as regards "plain error" are:

> (a) the record must clearly establish what occurred in the trial court;
> (b) a clear and unequivocal rule of law must have been breached;
> (c) a substantial right of the accused must have been affected;
> (d) the accused did not waive the issue for tactical reasons; and
> (e) consideration of the error is "necessary to do substantial
>      justice."

Id. at 641-42.

The transcript clearly indicates that the state examined the alleged victim in great detail regarding her original accusation.  The state continued its detailed presentation of the original accusation via testimony of investigators from both the Sheriff's Department and the Department of Human Services.  The trial court did not contemporaneously limit application of this evidence.  Impeachment evidence considered as substantive evidence, absent any other bases of admissibility, clearly breaches established law.  Nothing in the record indicates a waiver of either a pertinent objection or a request for jury instructions for tactical reasons.  The jury could not properly consider the hearsay prior inconsistent statements as substantive evidence and thereby corroborate the defendant's inculpatory statements.  Therefore, if the trial court did not limit application of the evidence in the jury instructions, that omission severely prejudiced the defendant's right to a fair trial.  The conviction can not stand without any corroborating evidence, and an error sufficiently egregious to probably change the outcome of a trial constitutes plain error.  See id. at 642.

Therefore, if the trial court omitted a limiting instruction to the jury, this omission constituted "plain error."  We must determine if such error would be harmless.  We consider error "in context of the entire record of the trial proceedings" and note that, as a matter of law, the conviction can not stand without some degree of corroboration for the inculpatory statements.  The prior

statements were the only other evidence in the record and were the only source of corroboration. If the trial court did not issue the appropriate limiting instruction, then that error was not harmless beyond a reasonable doubt. Id. at 642-43.

## CONCLUSION

A conviction based only on inculpatory statements with no independent evidence of a corpus delicti is invalid. Even if the trial court properly limited application of the statements, a verdict against the defendant would therefore still fail as a matter of law.[3] The cited precedent and the Tennessee Rules of Evidence compel our reversing this conviction and dismissing the case.

Based on the foregoing, the judgment of the trial court is REVERSED and the case is DISMISSED.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
DAVID G. HAYES, Judge

_____
JOE G. RILEY, Judge

_____

[3] The submitted record does not comprise the jury instructions, but the transcript states that the defendant did not make a special request for instructions.