IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2019

## WILLIAM ACREE EX REL. JOHN D. ACREE v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Circuit Court for Davidson County**
**No. 16C-1166      Thomas W. Brothers, Judge**

_____

### No. M2019-00056-COA-R3-CV

_____

This appeal arises from an action in tort against the Metropolitan Government of Nashville and Davidson County Tennessee ("the Metropolitan Government") as the sole defendant. The action is brought by the brother on behalf of the decedent who died after being shot by police officers employed by the Metropolitan Government. The plaintiff asserts that the Metropolitan Government owed a special duty of care to the decedent because the police officers were reckless by failing to conduct a reasonable investigation concerning the decedent's mental health before attempting to serve a felony warrant. Moreover, the plaintiff asserts that police officers failed to abide by internal police department guidelines pursuant to which, the complaint alleges, the officers should have withdrawn from the area before the decedent exited the rear door of his house pointing a handgun at police officers. The undisputed material facts are that when the officers attempted to serve the decedent at his residence, the decedent refused to respond to the officers at the front door of his residence and, instead, abruptly exited through the rear door armed with a loaded handgun where the decedent and one of the police officers exchanged gunfire, resulting in the death of the decedent. The trial court summarily dismissed the complaint under the Governmental Tort Liability Act finding, *inter alia*, that the police officers owed a general duty to the public at large when serving the felony capias; the internal policies and procedures of the Metropolitan Police Department did not establish a duty enforceable in tort; there were no genuine issues of material fact to show the police officers acted recklessly, thus the special duty exception to the public duty doctrine did not apply; and because the special duty doctrine did not apply, the police officers and the Metropolitan Government were immune from liability. The trial court also found the claim was barred by the doctrine of comparative fault based on the undisputed fact that the decedent was at least 50% at fault for his injuries and death because he aimed a loaded weapon at the police officer before the officer opened fire. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON II and KENNY W. ARMSTRONG, JJ., joined.

Phillip L. Davidson, Brentwood, Tennessee, for the appellant, William Acree, as brother, next of kin to and the executor of the Estate of John D. Acree.

Andrew D. McClanahan, Christopher M. Lackey, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

**OPINION**

On April 29, 2015, John D. Acree ("Decedent") failed to appear for a court hearing concerning an aggravated criminal trespass charge. His failure to appear was a Class E Felony, resulting in the issuance of a felony warrant. Later that day, William Acree ("Plaintiff"), Decedent's twin brother, spoke with Decedent's criminal defense attorney, who informed Plaintiff that police officers would likely come to arrest Decedent later that night or the next day at Decedent's home in Nashville where the events at issue occurred.

The next morning, Officer Arthur Hummell searched the "hot warrants box" and discovered an outstanding warrant for the arrest of Decedent. Officer Hummell also noted there was an Officer Safety Alert that stated: "Person of Interest (03/27/2013 - ) Comments: Officer Safety Issue — subject may exhibit paranoia and feel that officers are following him. Subject may video encounters with police, other citizens at random. Please forward copies of all paperwork to the security threat section / SID." Officer Hummell also noted that Decedent had been arrested three times in the past six months without incident. Thereafter, Officer Hummell proceeded to Decedent's home address to serve the warrant.

Upon arriving at Decedent's home and concluding that Decedent was likely at home because there were two automobiles at the residence, Officer Hummell called for backup. When Officers Mark Haugen, William Wright, and Devin Mabry arrived at the scene, Officer Hummell informed them of the Officer Safety Alert. Because one of the automobiles was at the rear of the house, Officer Hummell directed Officers Haugen and Wright to cover the back door while Officers Hummell and Mabry went to the front door. Officer Hummell knocked on the door and identified himself as a police officer. After no one answered, Officer Hummell looked through a hole in the door and saw Decedent in the house but he was not moving toward the front door. Officer Hummell then knocked on the door again and asked Decedent to come to the door. After seeing Decedent disappear as he was walking away from the front of the house, Officer Hummell announced over his radio that Decedent was walking toward the back of the house.

- 2 -

Officer Wright, who was positioned behind the house, then saw Decedent abruptly open the back door and raise a firearm at him. In response, Officer Wright discharged his weapon at Decedent and took cover as Decedent returned fire. Officer Wright's gunfire hit Decedent and resulted in his death. All of this occurred in less than two minutes after Officer Hummell announced that he had seen Decedent through the front door.

Plaintiff brought suit on behalf of Decedent against the Metropolitan Government ("Defendant") pursuant to the Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-205. In the complaint as amended, Plaintiff contends the police officers failed to abide by General Order 18.110, Interviewing and Transporting Mentally Ill Persons, which would have caused them to withdraw from the home after seeing Decedent ignore Officer Hummell's knocking at the front door and contact the Mobile Crisis Response Team. Plaintiff relies on the fact that the Officer Safety Alert identified Decedent as paranoid for the proposition that the police were aware Decedent had mental disabilities. Plaintiff also contends that Decedent was mentally impaired, and the officers "failed to make a reasonable investigation as to whether [Decedent] posed a danger to himself and others." Further, Plaintiff contends the police officers acted recklessly in attempting to serve the capias by not acting pursuant to General Order 18.110 and Emergency Action Plan #19.[1]

Defendant moved for summary judgment on the basis there was no duty for the officers to avoid serving the warrant or to retreat after seeing Decedent walk toward the rear of the house. Defendant maintained the risk was not foreseeable where Decedent had been arrested by the Metropolitan Nashville Police Department ("MNPD") three times in recent months without an incident of violence, information that was available to Officer Hummell prior to attempting to serve the outstanding warrant.[2] Defendant also contended that the General Order and internal policies, procedures and guidelines of the MNPD upon which Plaintiff relied did not establish a duty enforceable in tort. Relying on *Johnson v. Rowswell*, Defendant contended that courts in Tennessee "have not found internal policies to create a legal duty and have even questioned whether internal policies are admissible for any purpose whatsoever." No. M2009-00731-COA-R3-CV, 2009 WL 3460365, at *7 (Tenn. Ct. App. Oct. 29, 2009).

---

[1] Emergency Action Plan # 19 provides instruction for dealing with a barricaded suspect/hostage situation. The Barricaded Suspect OPG cited by Plaintiff states as follows: "The first responding officer to any barricaded subject/hostage situation should attempt to avoid confrontation in favor of controlling the situation. Whenever possible, a hostage situation should not be allowed to become mobile. ***An inner perimeter to prevent egress of the suspect and an outer perimeter to prevent ingress of any others should be established as soon as possible by officers utilizing cover and concealment."

[2] Information regarding all Davidson County arrests was available to Officer Hummell when he pulled up the outstanding warrant on his computer prior to attempting to serve Decedent.

Alternatively, Defendant asserted that if the MNPD officers owed a duty with respect to how and when they served the felony warrant, it was entitled to summary judgment because there was no breach of that duty. Defendant insisted that Decedent was not subject to the mentally ill persons policy or special precautions because Plaintiff conceded that Decedent had not been diagnosed with a mental illness, had not been treated for a mental illness, and was capable of making his own decisions at the time of his death. Defendant also contended that the officers did not violate General Order 18.110 because the General Order only applies when officers come into contact with someone in the absence of a violation of the law or involving a minor violation of the law. Here, the officers were present at Decedent's residence to serve a felony warrant, which they had a public duty to serve. Additionally, the General Order applies when the officers are interacting with the person at issue and that person behaves in a way that puts the officers on notice that he is an individual with mental illness who poses a substantial likelihood of serious harm to himself or others at the time. Defendant maintained that the officers had not been interacting with Decedent for the officers to be on notice of any abnormal behavior on the part of Decedent. Thus, Defendant contended that the General Order did not apply to the facts of this case.

Defendant also maintained that the MNPD officers did not violate "Emergency Action Plan # 19 Hostage/Barricade Situations" or the "Call Out Guidelines." Plaintiff's assertion is that the MNPD officers breached a duty by attempting to serve the warrant before calling in their supervisor or otherwise requesting the assistance of the Special Weapons and Tactics Team (SWAT). Defendant maintains that the officers had no reason to be on notice that Decedent would act in a hostile manner.

In his response in opposition to the motion for summary judgment, Plaintiff argued that Officer Hummell knew Decedent had been involved in a number of incidents involving his paranoia and that Officer Hummell was aware Decedent posed a potential threat to the officers' safety. He also relied on the deposition testimony of Steve Brommer to establish that Detective Roland said Officer Hummell saw Decedent carrying a firearm as he walked to the rear of the house. Based on their training, Plaintiff argues the officers should have assumed that Decedent would not respond appropriately to any orders they gave due to his paranoia. As such, Plaintiff asserted that Officer Hummell should have alerted his supervisor as required by General Order 18.110 and requested a Mobile Crisis Team to aid in a safe surrender of Decedent. Because the officers failed to call a supervisor or the Mobile Crisis Team to help them recognize and properly respond to persons with mental illness and disabilities, Plaintiff argued the officers acted recklessly.

Defendant objected to the deposition testimony of Steve Brommer as inadmissible hearsay. Defendant maintained that Plaintiff failed to establish an applicable hearsay exception.

In its order granting summary judgment, the trial court held that (1) the deposition testimony of Steve Brommer was inadmissible hearsay; (2) the police officers owed a general duty to the public at large when serving the felony capias; (3) the internal policies and procedures of the Metropolitan Police Department did not establish the guidelines for a duty enforceable in tort; (4) there were no genuine issues of material fact to show the police officers acted recklessly; thus, the special duty exception to the public duty doctrine did not apply; and (5) because the special duty doctrine did not apply, the police officers and the Metropolitan Government were immune from liability. Further, the court found Plaintiff's action was barred by the doctrine of comparative fault. The court explained that even though Officer Wright fired the first shot, it was undisputed that Decedent raised a loaded weapon at Officer Wright before he opened fire. Resultantly, the court found that reasonable minds could not disagree as to Decedent being at least 50% at fault for his injuries and death as a result of his conduct.

## ISSUES

The parties raise several issues on appeal which we have consolidated and rephrased as follows:

1. Did Plaintiff waive the issues he asserts on appeal by failing to follow the requirements of Tenn. R. App. P. 27(a)(7)?

2. Did the trial court err in holding that a third party's testimony concerning what Officer Hummell said at the scene was inadmissible hearsay within hearsay because the statement attributed to Officer Hummell was not against his personal interest?

3. Did the trial court err in holding that the Metropolitan Government was entitled to summary judgment as a matter of law because it did not owe a special duty to Decedent, and it did not breach any duty owed to Decedent?

4. Did the trial court err in holding the claim was barred by the doctrine of comparative fault based on the undisputed fact that Decedent was at least 50% at fault for his injuries and death because he aimed a loaded weapon at the police officer before the officer opened fire?

## STANDARD OF REVIEW

This court's standard for reviewing a trial court's grant of a motion for summary judgment pursuant to Tenn. R. Civ. P. 56 is de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Id*. In so doing, we consider the

evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264 (emphasis in original).

When a motion for summary judgment is made and supported as provided in Tenn. R. Civ. P. 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id*. at 265. Instead, the nonmoving party must respond with specific facts showing there is a genuine issue for trial. *Id*. A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

## ANALYSIS

### I.      WAIVER OF ISSUES RAISED ON APPEAL.

As an initial matter, we acknowledge Defendant's contention that "[b]y failing to follow the requirements of Tenn. R. App. P. 27(a)(7), Appellant waived the issues that he asserts on appeal." As Defendant states in its brief:

> Tennessee "Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as described by [Tenn. R. App. P.] 27(a)(7) constitutes a waiver of the issues raised." *Chiozza v. Chiozza*, 315 S.W.3d 482 at 489 (Tenn. 2009) (quoting *Bean v. Bean*, 40 S.W.3d 52 at 55 (Tenn. Ct. App. 2000)). Indeed, "a skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *Chiozza* at 489.

Although Plaintiff's brief is deficient in many respects, it presents sufficient, though minimal citations to the record and to relevant authorities to avoid waiver. Moreover, we prefer to address the merits of the issues over dismissing appeals for borderline failures to comply with the Tennessee Rules of Appellate Procedure and the rules of this court. Accordingly, our analysis of the issues follows.

The trial court deemed inadmissible the hearsay testimony of Steven Brommer concerning what he allegedly heard Detective Roland say at the scene hours after the death of Decedent. The court found it was inadmissible because it was "hearsay within hearsay" that did not qualify as a hearsay exception. More specifically, the trial court found that Detective Roland's alleged out-of-court statement concerning what he heard from Officer Hummell was not against Detective Roland's own personal interest as required by the comments to Tennessee Rule of Evidence 803 for the alleged statement to qualify as an exception to the hearsay rule.

Plaintiff concedes that Mr. Brommer's statement is hearsay within hearsay; nevertheless, he relies on Tennessee Rule of Evidence 805 which provides that "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules or otherwise by law." Accordingly, if either Officer Hummell's alleged statement to Detective Roland or Detective Roland's alleged statement is found to be inadmissible hearsay, the hearsay within hearsay is excluded.

In his response in opposition to the motion for summary judgment, Plaintiff introduced the deposition testimony of Steve Brommer, a family friend who arrived at the scene a few hours after being notified of Decedent's death. Mr. Brommer testified that he heard an officer at the scene, later identified as Detective Roland, say that "the two [officers] in the front door saw [Decedent] with a pistol walking towards the back door and then ended up in a shoot-out." It was later determined that the officer who allegedly made the statement that he saw Decedent with a gun as he walked toward the back of the house was Officer Hummell.[3]

The trial court's ruling on the hearsay issue reads as follows:

> Plaintiff asserts as fact that police officer, Arthur Hummell, witnessed John Acree through a hole in the front door of the Acree residence with a gun while attempting to serve a valid capias on John Acree. Plaintiff attempts to establish this factual assertion through a third party who testified he overheard Metropolitan Government Detective William Roland state that Officer Arthur Hummel had stated to Roland that he had seen John Acree through the hole in the front door with a weapon. The Metropolitan Government, pursuant to Tenn. R. Civ. P. 56.03 and 56.06, timely objected

---

[3] Officer Hummell, one of the officers at the front door, denied making such a statement and testified that what he saw was the decedent walking by the front door toward the rear of the residence.

to this factual assertion as inadmissible hearsay within hearsay under the Tennessee Rules of Evidence.

Plaintiff does not deny that the proposed factual assertion is hearsay within hearsay, but instead maintains that the asserted fact fits within the admission by a party-opponent exception articulated in Tenn. R. Evid. [803](1.2). However, Plaintiff has failed to identify how the statement was against Detective Roland's personal interest, as required by Tenn. R. Evid. [803](1.2) and the comments thereto. Plaintiff offers no other hearsay exception applicable to this alleged statement by detective Roland. In turn, this Court sustains the Metropolitan Government's hearsay objection in relation to this asserted fact. The statement is inadmissible hearsay not subject to an established exception and it is accordingly not considered by this Court as a properly disputed fact in the consideration of this motion.

The evidentiary issue is whether the factual assertion that Officer Hummell saw Decedent walk by the front door with a gun toward the rear of the residence is admissible hearsay. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). A hearsay statement is not admissible except as provided by the rules of evidence or otherwise by law. Tenn. R. Evid. 802. If a statement is hearsay and does not fit one of the exceptions, it is inadmissible and must be excluded. *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015).

The standard of review for a hearsay ruling is as follows:

The standard of review for rulings on hearsay evidence has multiple layers. Initially, the trial court must determine whether the statement is hearsay. If the statement is hearsay, then the trial court must then determine whether the hearsay statement fits within one of the exceptions. To answer these questions, the trial court may need to receive evidence and hear testimony. When the trial court makes factual findings and credibility determinations in the course of ruling on an evidentiary motion, these factual and credibility findings are binding on a reviewing court unless the evidence in the record preponderates against them. Once the trial court has made its factual findings, the next questions—whether the facts prove that the statement (1) was hearsay and (2) fits under one [of] the exceptions to the hearsay rule—are questions of law subject to de novo review.

*Id*. (citations omitted).

The hearsay within hearsay exception at issue here is articulated in Tennessee Rule of Evidence 803(1.2)(D). The Rule provides an exception for "a statement made by

an agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship under circumstances qualifying the statement as one against the declarant's interest regardless of declarant's availability." Tenn. R. Evid. 803(1.2)(D). There are three requirements for admissibility under Rule 803(1.2)(D):

1) the statement must "concern a matter within the scope of the agency or employment";
2) the statement must "be made during the existence of a the [sic] agency or employment relationship"; and
3) **the statement must "be made under circumstances qualifying the statement as one against declarant's interest**."

*McCrary v. City of Memphis*, No. W2004-01840-COA-R3-CV, 2005 WL 452788, at \*4 (Tenn. Ct. App. Feb. 25, 2005) (emphasis added). Each of these three prongs must be established for the hearsay to be admissible. *Id*. We focus our analysis on whether the statement was against Detective Roland's personal interest.

Plaintiff contends that the statement was against Detective Roland's personal interest because Detective Roland could have been "cast as a defendant in a suit by Appellant here predicated on 42 USC 1983 for violating the constitutional rights of plaintiff's decedent under color of law." Plaintiff, however, fails to take into account that Detective Roland was neither present nor involved in the serving of the warrant.

In *Dailey v. Bateman*, this court considered whether a police officer's statement was against his personal interest when the officer, Sgt. Owen, allegedly stated to one of the parties that the stop sign had been in the ditch before the accident. 937 S.W.2d 927, 929 (Tenn. Ct. App. 1996). The claim at issue was a tort action against the city for negligently not replacing the stop sign. *Id.* at 928. The plaintiff tried to admit Sgt. Owen's statement under Tenn. R. Evid. 803(1.2)(D) to show the city had notice the sign was in the ditch. *Id.* at 930. At trial, Sgt. Owen testified that he did not recall speaking to the Plaintiff at the hospital, but did not deny the conversations took place. *Id*. The trial court permitted Sgt. Owen's prior inconsistent statements to be used as substantive evidence, holding the statements were admissible under Rule 803(1.2)(D). *Id*. On appeal, this court reversed holding that Sgt. Owen's statement was not an admission against the interest of the city because it was not against his personal interest when it was made. *Id*. Thus, we found Sgt. Owen's statement was not admissible hearsay under Tenn. R. Evid. 803(1.2)(D). *Id*.

Here, the last prong of the test set forth in *McCrary*, that the statement must be against the declarant's personal interest, is not met. 2005 WL 452788, at \*4. Plaintiff has set forth no proof to establish that Detective Roland's alleged statement regarding what he heard from the other officers was against his personal interest when it was made.

Therefore, we affirm the trial court's ruling that the original hearsay statement made by Officer Hummell is inadmissible. Accordingly, the hearsay within hearsay was properly excluded.

### III. DUTY AND BREACH OF DUTY

Plaintiff contends Defendant and its police officers owed Decedent a special duty of care and breached that duty.[4] Plaintiff contends the special duty of care arises from the officers' reckless attempt to serve the warrant while knowing that an Officer Safety Alert was in Decedent's file. Additionally, Plaintiff contends the facts of this case and certain MNPD internal policies, procedures and guidelines imposed a duty upon the officers to withdraw from the scene and call the Mobile Crisis Response Team or the SWAT Team and hostage negotiators before Decedent exited the back door armed with a handgun. Further, Plaintiff contends the facts of this case, and the applicable MNPD internal policies, procedures and guidelines establish that the officers' acts and omissions were reckless.

This is a negligence action, and the rights and responsibilities of the parties to this action are governed by the Tennessee Governmental Tort Liability Act ("GTLA"). The trial court found that Defendant owed a general duty to the public at large, which the parties on appeal do not challenge. At issue in this appeal are the public duty doctrine and the special duty exception to the public duty doctrine. Generally stated, the special duty doctrine is an exception to the rule of no-liability for municipalities and public employees. *Ezell v. Cockrell*, 902 S.W.2d 394, 401 (Tenn. 1995). The special duty exception "applies where a 'special relationship' exists between the plaintiff and the public employee that gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." *Id*.

The public duty doctrine originated at common law and survived the enactment of the GTLA. *Id*. at 400. The public duty doctrine "shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." *Id*. at 397. The GTLA "reaffirms the general rule of immunity from suit for governmental entities and expressly extends the common-law immunity to proprietary functions." *Id*. at 399 (citing Tenn. Code Ann. § 29-20-201(a)).

> The public duty doctrine is an affirmative defense that arises after determining the issue of immunity under the GTLA. If the GTLA removes immunity, then the common law rule of immunity under the public duty

---

[4] Plaintiff makes no claim that the police officers used excessive force while attempting to serve the capias or exchanging gunfire with Decedent and there is no claim that the actual use of force was erroneous or inappropriate in and of itself.

doctrine provides an additional layer of defense and is the next level of inquiry for the court.

*Brown v. Hamilton Cnty.*, 126 S.W.3d 43, 48 (Tenn. Ct. App. 2003) (citations omitted). "The doctrine applies to cases . . . where the government had no reason to know a particular individual posed a threat, such as . . . , the severely mentally ill, or a public employee with a known propensity for violence." *Id*. at 49.

Although the public duty doctrine "shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large," *Ezell*, 902 S.W.2d at 397, an exception to the public duty doctrine applies if a special relationship exists between the plaintiff and governmental employee giving rise to a special duty. *Id*. at 402. Our Supreme Court recognized three situations in which the public duty doctrine is nullified by the special duty exception:

(1) a public official affirmatively undertakes to protect the plaintiff and the plaintiff relies upon the undertaking;

(2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or

(3) **a plaintiff alleges a cause of action involving intent, malice, or reckless misconduct**.

*Chase v. City of Memphis*, 971 S.W.2d at 380, 385 (quoting *Ezell*, 902 S.W.2d at 402) (emphasis added).[5]

The first two grounds of the exception are inapplicable in this case. Here, the issue of liability hinges upon Plaintiff's contention that Defendant's police officers acted recklessly by not abiding by the internal MNPD policies. "Reckless conduct is defined as taking place 'when a person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances.'" *Brown*, 126 S.W.3d at 49 (quoting *Gardner v. Insura Prop. & Cas. Ins. Co.*, 956 S.W.2d 1, 3 (Tenn. Ct. App. 1997)).

---

[5] "If one of these special relationships exists, immunity is removed." *Holt v. City of Fayetteville*, No. M2014-02573-COA-R3-CV, 2016 WL 1045537, at *4 (Tenn. Ct. App. Mar. 15, 2016) (citing *Matthews v. Pickett Cty.*, 996 S.W.2d 162, 165 (Tenn. 1999) (holding the issuance of an order of protection created a special duty)).

- 11 -

Plaintiff contends the duty, or standard of care, the police officers allegedly violated arises from the internal policies and procedures of the Metropolitan Police Department, particularly General Order No. 18.110. The policy mandates that an officer is to withdraw when alerted that a suspect is experiencing a mental deficiency of some kind. General Order No. 18.110 provides:

Interviewing and Transporting Mentally Ill Persons
18.110.010 Generally

Police officers frequently come into contact with persons displaying disruptive or abnormal behavior. If that person has committed significant violation of the law, it is the duty of the officer to arrest the individual and process him/her in accordance with standard Metropolitan Police Department procedures. It is the function of the courts, in such cases, to determine if treatment at a mental health facility is necessary. In cases where there is no violation of the law, or only minor violations of the law, and the individual demonstrates behavior of such a nature so as to indicate that he/she is a "mentally ill individual" who poses a "substantial likelihood of serious harm" to himself/herself or others, it shall be the duty of the investigating officer(s) to take action in accordance with the procedures listed in this policy.

The General Order applies to a "Mentally Ill Individual" which is defined in General Order 18.110.020 Definitions as, "an individual who suffers from a psychiatric disorder; excluding an individual whose only mental disability is mental retardation." Plaintiff presented no evidence to establish that Decedent was a "Mentally Ill Individual" as defined in the general order. Moreover, Plaintiff presented no expert proof to establish how or to what extent General Order 18.110.020 applied to this case or whether and how the officers deviated from the applicable standard of care. Also significant is the undisputed fact that Decedent was never diagnosed as or treated for schizophrenia, paranoia, or a mental illness. Thus, Plaintiff has not presented sufficient facts to allege that General Order 18.110.020 was applicable.

Alternatively, Plaintiff contends the officers breached a special duty that arose from the policy set forth in the "'Call-Out' Guidelines for Investigative and Support Elements 15.10." The guidelines provide in pertinent part:

I. With the approval of on-scene supervisory authority, SWAT <u>may be notified</u> for **emergency** high risk and/or unusual situations including but not limited to the following situations: a. Hostage Situations; b. Barricaded persons; . . . e. Arrests involving suspects who have the propensity for violence or where weapons may be involved; [or] Dealing with non-complaint subjects who are a threat to themselves or the general public . . . .

- 12 -

*Id.* (bold in original, underlining added). Plaintiff relied on the alleged out-of-court statement by Mr. Brommer to establish that Emergency Action Plan # 19 and General Order 15.10 were triggered because they dictate that the SWAT Team and hostage negotiator may be called out when there is a barricaded person with a firearm and that the actions of the officers on the scene are limited to preserving the perimeter until the SWAT Team and hostage negotiator arrive. However, there is no admissible evidence to establish that the officers had any knowledge that Decedent was armed until he exited the rear door armed with a loaded firearm pointed at the officers. Even assuming arguendo that these guidelines established a duty, the undisputed facts of this case reveal that the officers had no opportunity to follow the call-out guidelines because there was no reason to believe that an emergency high risk and/or unusual situation existed or was probable until the moment Decedent abruptly exited the rear of the house pointing a fire arm at the police officers.

Moreover, had Decedent barricaded himself in his home, which he did not, the policy did not require the officers to withdraw from their posts at the front or rear of the residence to wait for SWAT to arrive. In fact, Section I(B) of Emergency Action Plan #19 states that, "[w]henever possible, a hostage situation should not be allowed to become mobile." *Id.* The guidelines go on to provide that an inner and outer perimeter should be established to contain the situation and "prevent egress of the suspect." *Id.* Additionally, the policy states that "[o]fficer safety should be a priority…." *Id.*

We also find it significant that Decedent had been arrested three times within the past few months without incident, and one of the arrests occurred at Decedent's home. Therefore, based on these undisputed facts, there is no factual basis on which to find that the officers acted recklessly by not calling a supervisor or the SWAT team prior to Decedent exiting the back door armed with a handgun.

The portion of the trial court's ruling that is pertinent to the special duty issue and reckless conduct reads as follows:

> This Court finds that the police officers at issue in this matter owed a general duty to the public at large in the service of a felony capias. Accordingly, the public duty doctrine is applicable to the actions of the police officers in this matter. Plaintiff alleges that the special duty exception of gross misconduct/recklessness applies. The essence of Plaintiff's claim is that the internal policies and procedures of the Metropolitan Police Department—particularly General Order No. 18.110—mandated that 'an officer is supposed to take action when alerted that a suspect is experiencing a mental deficiency of some kind.

The operative complaint in this matter simply alleges that the officers serving the capias were, guilty of engaging in reckless misconduct. However, there are not any factual assertions in the Complaint, or affidavits identifying and discussing the alleged misconduct at issue, and Plaintiff admits that no expert testimony will be presented at trial on the conduct of the officers. In essence, Plaintiff asks this Court to infer, based upon a review of the Metropolitan Government's internal policies and procedures that Officer Hummell and the other officers failed to abide by these internal policies and procedures. Plaintiff also seeks to have this court determine that such a failure by the officers serving the capias constituted recklessness.

Respectfully, the Court finds that internal policies and procedures of the Metropolitan Police Department do not establish the guidelines for a duty enforceable in tort, though such polices can be considered by the Court in the duty analysis. From the record, all the Court can see is that the officers on the scene were put on alert to be cautious and careful in the apprehension of John Acree. John Acree had demonstrated bizarre and adversarial behavior in the past, but there is no indication of Mr. John Acree ever being admitted to any mental health provider for treatment or ever declared schizophrenic or otherwise mentally incompetent. The general use of the term paranoid is common in everyday parlance. But a factual finding that John Acree was paranoid carries a very specific and unique clinical diagnosis that is not supported by any expert testimony in this matter. The mere conclusory statements and allegations that the officers were reckless in this matter are unsupported by the facts that have been submitted at the time of the summary judgment hearing.

Consequently, the Court finds that there are no genuine issues of material fact to show that the police officers acted recklessly in this matter. Accordingly, the Court finds that the special duty exception to the public duty doctrine does not apply in this matter. In turn, the police officers and the Metropolitan Government are immune under these circumstances from being held liable for John Acree's death.

To survive summary judgment in this case, Plaintiff "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. Moreover, Plaintiff "must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye*, 477 S.W.3d at 265 (emphasis in original). Plaintiff presented no evidence and identified no authority to establish a duty based on the internal policies, procedures and guidelines. Further, Plaintiff did not present expert testimony to establish how the officers' actions or omissions may have violated the internal policies and

procedures. This is fatal because our courts "have not found internal policies to create a legal duty and have even questioned whether internal policies are admissible for any purpose whatsoever." *Johnson v. Rowsell*, 2009 WL 3460365, at *7 ("We can find no authority that establishes that an internal policy creates a legal duty to the public at large.") (citing *Giggers v. Memphis Housing Authority*, No. W2006-00304-COA-R3-CV, 2007 WL 2216553, at *12 (Tenn. Ct. App. Aug. 3, 2007), reversed on other grounds, 277 S.W.3d 359 (Tenn. Feb 03, 2009)). Therefore, Plaintiff failed to establish that the internal policies, procedures and guidelines created a duty. Furthermore, and as a consequence of this failure, Plaintiff cannot establish a breach of duty based on alleged violations of the internal policies, procedures and guidelines. As a result, Defendant was entitled to summary judgment as a matter of law.

## IV.   COMPARATIVE FAULT

The trial court held that no reasonable person could find that Decedent, a competent person with notice that police were attempting to serve a warrant upon him, was less than 50% at fault for his injuries when he exited the rear door of his home, pointed a gun at a police officer who was lawfully present, and exchanged gunfire with the police officer. Plaintiff contends this was error.

Our ruling on the duty issue is dispositive of the claims asserted by Plaintiff. Nevertheless, to be thorough, we have reviewed the motion for summary judgment, the statement of undisputed facts upon which Defendant relies, Plaintiff's response in opposition to the motion and the statement of undisputed facts and have concluded, as the trial court did, that no reasonable person could find that Decedent, a competent person with notice that police were attempting to serve a warrant upon him, was less than 50% at fault for his injuries. Accordingly, we affirm the trial court on this ground as well.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against appellant, William Acree.

_____
FRANK G. CLEMENT JR., P.J., M.S.